**Jerry VANDIVER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17107.**

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1973.

Rehearing Denied Jan. 24, 1973.

W. B. Ward, Jr., Ada, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Frank Muret, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Jerry Vandiver, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Pontotoc County for the offense of Unlawful Sale of Stimulants. His punishment was fixed at one (1) year in the state penitentiary and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Jenny Lynn Lee testified that during the fall of 1970 she was employed as a carhop at Jerry's Drive-In in Ada. The defendant was also employed at the drive-in as a cook. She and the defendant discussed drugs and the defendant stated that he could get them. She informed Detective Cranford of the conversations and agreed to attempt to purchase drugs from the defendant. On the evening of November 23, 1970, she asked the defendant if he could get some "speed" or "hash" for her. The defendant stated that it would be easier to get the "speed". They agreed on the purchase price of Five Dollars ($5.00). She went outside where her mother was waiting in the car and obtained the Five Dollars. She returned to the drive-in and gave the money to the defendant. The defendant stated that he would call her at home after he "got it". At approximately 9:00 the defendant telephoned her and stated " 'I have the "speed", let's go—' " and " 'We will meet behind Lefty's Truck Stop, and hurry, make it fast.' " She replied, " 'Okay, I'm on my way.' " (Tr. 14) She told her mother to call Detective Cranford and inform him where she was going. She proceeded to the location behind the truck stop. The defendant got in the front seat of her car and gave her a small foil package containing five tablets. At this time, she observed Detective Cranford near the grease rack at the truck stop. The defendant got back into his car and Cranford approached the scene in his vehicle. Cranford stopped the defendant's car and told the boys to get out. While the officers were searching the defendant's car, she walked down and talked to the defendant and David Rose. She asked them if they had anything. Rose stated, " 'No, we took the stuff over to my house—what was left, over to my house.' " (Tr. 21) The defendant asked her, " 'Well, did you eat the "speed"?' ". She replied that she had not and the defendant stated, " 'Well, go eat it. You're a fool for not doing it before you came down here.' " (Tr. 21) She ran back to her car and pretended to look for the pills as though she was going to "eat them." After checking the defendant's car, Cranford told them to get back in it and leave. She gave the package she received from the defendant to Detective Cranford.

She further testified that she had previously given the defendant Three Dollars ($3.00) approximately a month before to get her some LSD. On November 21, the defendant approached her and asked her if she wanted the LSD. She replied yes and the defendant delivered her one pill. On November 22, the defendant was asking around to see if anyone wanted to go in with him to buy some marijuana. She asked the defendant if he wanted her to go in with him. The defendant stated, " 'Well, if you want to.' " (Tr. 9) She gave the defendant Seven Dollars ($7.00) and on the afternoon of November 23, he delivered a quantity of marijuana to her.

Virginia Harbin testified that she was the mother of Jenny Lynn Lee. At approximately 6:00 p. m. on November 23, she went with her daughter to Jerry's Drive-In. Jenny went into the drive-in and stayed approximately 5 or 10 minutes. She came back to the car and took a Five Dollar bill from her purse and went back into the cafe. At approximately 9:00, Jenny answered a phone call. She called Detective Cranford and told him where Jenny was going to meet the defendant. She delivered the evidence received in the other prior transactions to Captain Cranford.

Captain Cranford testified that on the evening in question, he received a call from Mrs. Harbin at approximately 9:00 p. m. He, accompanied by Officer Barnett, went to Lefty's Truck Stop and observed two vehicles sitting close together. He observed the defendant sitting on the passenger side of Jenny's car. He further observed the defendant pass a shiny package to Jenny and, in return, something was passed back to the defendant. He subsequently delivered the Exhibits to John McAuliff at the Oklahoma State Bureau of Investigation.

Officer Barnett testified that he went with Captain Cranford to a location near Lefty's Truck Stop shortly after 9:00 p. m. His testimony as to what transpired thereafter did not differ substantially from the testimony of Cranford, with the exception that he did not see the transaction in the Harbin vehicle because he was looking for a place to hide behind.

John McAuliff testified that he was a chemist employed by the State Bureau of Investigation. He conducted tests of the State's exhibits and ascertained that the same were marijuana, amphetamines and LSD. The exhibits were admitted without objection by the defendant.

The defendant testified that in November of 1970, he was sixteen (16) years old and worked at Jerry's Drive-In. Jenny told him that she was taking Dymerols and they had several conversations about drugs. Some time in October, she gave him Three Dollars and asked him to get her an LSD pill. He did not get her one right away because he did not know where to obtain it. She continued to urge him to obtain the pill and, on occasion, bought him beer and whiskey. He obtained the pill on November 21 and gave it to her. On the 22nd of November, some people came to the drive-in who had some marijuana. He testified that he was "interested in getting some" and asked some of the boys if they wanted to go in half with him. When they said no, Jenny said " 'Well, I'll go in with you if you want me to.' " (Tr. 161) She gave him Seven Dollars ($7.00) and he purchased it. On the evening of the 23rd, she asked him to get her some "speed". He told her to go to Billy Worchester and get it. She replied that she didn't think he would give it to her because he didn't know her. The defendant then said, " 'Well, okay, if you'll give me the money, I'll go by after work and get it for you.' " (Tr. 162) He testified that he obtained the pills from Worchester and called Jenny. He further testified that "I didn't think she would tell, I thought I could trust her, she had been buying me beer and all, so, I didn't see anything wrong with it, so, I went ahead and got it for her." (Tr. 163)

■ The first proposition asserts that the trial court erred in overruling the defendant's motion to dismiss. The motion was based on the fact that the defendant was of the age of sixteen years at the time

the alleged offense was committed. We are of the opinion that the trial court properly overruled defendant's motion to dismiss. In Freshour v. Turner, Okl.Cr., 496 P.2d 389, we stated in the second paragraph of the Syllabus:

"An infant who committed a criminal act between 1941 and March 16, 1972, and had not reached his fourteenth birthdate on the date of the commission of the alleged offense, must have a certification hearing in Juvenile Court to determine if he or she should be held accountable for his or her acts. If, between 1941 and March 16, 1972, they had passed their fourteenth birthdate at the time of commission of the criminal act, it is legally presumed they knew the wrongfulness of their acts, and no Juvenile Proceedings are required."

The final proposition asserts that the trial court erred in overruling defendant's demurrer for the reason that the evidence of the State revealed that the defendant was a victim of entrapment. The record reflects that the jury was instructed as to entrapment. In Kite v. State, Okl. Cr., 490 P.2d 1402, we cited with approval the case of Riddle v. State, Okl.Cr., 373 P. 2d 832, wherein we stated:

" 'Whether a defendant has been entrapped is to be determined by the jury, unless it can be decided as a question of law upon undisputed facts sufficient to to [sic] establish entrapment.' "

Although a close question, in the instant case entrapment could not be decided as a question of law upon undisputed facts and, therefore, the question was properly presented to the jury.

The judgment and sentence is, accordingly, affirmed.

BRETT, dissenting.

BLISS, J., specially concurring.

BRETT, Judge (dissents):

I am compelled to dissent to this decision for several reasons: First, if the United States Supreme Court was justified in finding, as a matter of law that the defense of entrapment was established in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), then this Court should follow the law stated by the Honorable Supreme Court and reach the same conclusion in the instant case. The facts of this case closely parallel those of Sherman v. United States, supra.

In the instant case, there was no proof that defendant had sold any kind of stimulant or other kind of drug to anyone else except for what the informer testified; and the record is devoid of proof of any conviction of defendant for either a misdemeanor or felony. On the other hand, in Sherman v. United States, supra, the defendant was a known narcotics user who was undergoing a cure for narcotics addiction when he was entrapped into making a narcotics sale to the government informer, and he had sustained other convictions.

The informer in the instant case was a twenty-one year old woman. On direct examination, she testified concerning her conversation with Detective Captain Cranford:

". . . I told Cranford then that I thought if I could gain their—gain Jerry's confidence, and I could possibly make buys."

On cross-examination, the informer was asked, "But over a period of time while you were trying to gain his [defendant's] confidence, you told him you used narcotics?" The witness answered, "Yes, I told him—."

The informer worked at "Jerry's Drive-In" where defendant also worked. The informer was old enough to buy beer and whiskey but defendant was not. The record shows that the informer bought beer and whiskey for defendant—off and on—over a period of more than a month, until she gained his confidence. After she reached her goal, she proceeded to induce the defendant to get marijuana, LSD, and speed for her on three different occasions. It was for the stimulants (speed) that de-

fendant was standing trial. On direct examination, the informer testified, "Well, I had gone down to Jerry's and went into the kitchen and asked Jerry if he could get some 'speed' or 'hash' for me. And it would be easier to get the 'speed'. So, that's what we decided on." Later, on cross-examination, the informer was asked, "Did you ever purchase beer for him [defendant]?". She answered "Yes." When she was asked concerning whether or not the police officers participated in her beer buying for defendant, she answered, "Yes, because I asked Captain Cranford before I did it, and I said, 'I don't want to do it if I'm going to get in trouble,' and he said, 'You won't, you'll be protected.'"

Commencing on page 109 of the transcript of evidence, Detective Cranford was asked on cross-examination, and gave the following answers:

"Q. Did she [the informer] ever discuss with you any way and means of obtaining Jerry's confidence in order to be able to make the buy from him?

"A. Yes, sir, she has.

"Q. Did this ever include the purchase of beer for this boy?

"A. Yes, sir, it was.

"Q. Do you know how old this boy is?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. It's a violation of the law to furnish beer to a minor, isn't it?

"A. Yes, sir, I believe it is.

\* \* \* \* \* \*

"Q. Did you ever tell her she wouldn't get in any trouble [for furnishing beer and whiskey to the defendant]?

"A. Yes, sir."

Defendant testified that the informer also bought whiskey for him during the period of time.

Title 37, Section 537, of the Oklahoma Statutes Annotated provides in part:

"(a) No person shall:

(1) knowingly sell, deliver, or furnish alcoholic beverages to any person un-

der twenty-one (21) years of age . . .."

It is not the intention of the administration of justice to authorize law enforcement officials to violate the law in order to cause others to violate the law, so that the unofficial violators may be apprehended.

Defendant admitted that he obtained the marijuana, LSD, and amphetamine tablets for the informer, but he explained that he did it as a favor for her; that he knew something about drugs from talk he had heard at high school; and that at first he didn't know exactly where to get the LSD tablet, and this was what caused the delay in getting it for the informer.

Concerning the marijuana, which the prosecutor made to appear to the jury to be a sale of marijuana by defendant, the informer testified:

"Well, Jerry—there was a group of boys, and Jerry asked all—was asking around the boys to see if they would go in with him to buy the marijuana, and they couldn't, because they didn't have any money, and then I ASKED JERRY IF HE WANTED ME TO GO IN WITH HIM, and he said 'well, if you want to.'" (Emphasis added.)

This appears to make the informer a "co-purchaser" of marijuana, instead of making defendant a seller of marijuana.

The informer also testified that she had earlier given defendant three dollars for him to get one LSD tablet for her because, "I don't know Billy [the original seller] that well, and I don't think if I walked up to him and asked him if I could buy some that he would give me any." This appears to make defendant a "procurer" of LSD for the informer, rather than a seller of LSD.

The United States Supreme Court stated in Sherman v. United States, supra:

"At the trial the factual issue was whether the informer had convinced an otherwise unwilling person to commit a criminal act or whether petitioner was

already predisposed to commit the act and exhibited only the natural hesitancy of one acquainted with the narcotics trade. * * * "

This factual issue, involving the defense of entrapment, raises two questions: (1) Did the police agent induce the accused to commit the offense charged; (2) if so, was the accused ready and willing without persuasion, and was he awaiting any propitious opportunity to commit the offense. Stated another way, defendant has the burden to show that he was induced into committing the crime; and the prosecution has the burden to establish that defendant was a willing seller. In the instant case, by the informer's own testimony, she gained defendant's confidence and seduced defendant into obtaining the amphetamine tablets for her. She was a twenty-one-year-old woman and he was a sixteen-year-old boy. This seduction must have been flattering to the boy.

As I set forth in my dissent to Kissick v. State, 504 P.2d 889, rendered by this Court on December 13, 1972, the time has come for this Court to clearly state, when the facts reveal entrapment—as a matter of law—that the trial court should rule on that question of law; and further, when the trial court fails to make such ruling, this Court should analyze the testimony, and if it justifies an affirmative ruling, then this Court should clearly determine the question of entrapment. Defendant's burden of establishing the inducement to commit the crime, was actually shown by the informer's testimony alone. Defendant's testimony was substantially the same as that given by the informer.

By the informer's own testimony she was working as an informer for the police; before executing her plan, she went to the detective who approved and sanctioned her plan of entrapment, including the violation of other statutes to accomplish her goal.

In Crosbie v. State, Okl.Cr., 330 P.2d 602 (1958), this Court announced:

" 'Entrapment' is the planning of an offense by an officer, or someone acting

under his direction, and his procurement by improper inducement of its commission by one who would not have perpetrated it, except for the trickery of the officer."

With reference to the citation from Riddle v. State, supra, a 1962 decision, wherein this Court stated that entrapment is a question for the jury, other jurisdictions are meeting the proposition squarely as a matter of law in cases such as this one. In State v. Boccelli, 105 Ariz. 495, 467 P. 2d 740 (1970), the Supreme Court of Arizona found as a matter of law, entrapment was established; also in State v. Sainz, 84 N.M. 257, 501 P.2d 1247 (1972), the Court of Appeals of New Mexico reached the same conclusion. Likewise, numerous federal courts of appeal, as well as the United States Supreme Court, have reached the same conclusion of law.

Secondly, I believe the trial court committed error when testimony and evidence was admitted concerning the marijuana and LSD. Defendant was faced in this trial with the illegal sale of stimulant, "to wit: five (5) pills containing and consisting of amphetamine," but in the progress of the trial, the prosecution introduced testimony and evidence of marijuana and LSD. The only relationship to the instant charge was the same informer, and the time difference of delivery was a matter of three days, i. e., November 21, 22, 23, 1970. There is no doubt in my mind but that the prejudicial effect of that evidence outweighed its probative value. The result must have been, in the minds of the jury, that defendant was a "big dealer" in drugs.

In State v. Bowen, Or.App., 492 P.2d 480, the defendant was convicted of unlawful sale of narcotic drug. The Oregon Court of Appeals stated, with reference to evidence offered, that defendant had previously used hashish:

" * * * [T]he prejudicial effect of showing criminal acts involving marihuana, other than that with which the defendant was charged, outweighed its probative value where the state had es-

tablished an uncontroverted prima facie case exclusive of such evidence."

The Oregon Court of Appeals concluded, "that the prejudicial effect of the introduction of evidence of other criminal acts by the defendant outweighed its probative value and its admission constituted reversible error."

In State v. Portrey, 6 Wash.App. 380, 492 P.2d 1050 (1972), Court of Appeals of Washington, Division 3, the third paragraph of the Syllabus states:

> "Admission, in prosecution for possession of LSD, nine exhibits, six of which related to marijuana or amphetamines and only a portion of one of which contained the alleged LSD tablets, and of testimony, concerning marijuana and amphetamines, which constituted approximately 40% of State's case in chief was not proper under exception to rule prohibiting evidence of unrelated crimes."

In the prosecution of this case, the State had available means of including all the elements referred to under provisions of 22 O.S.1971, § 404; but the prosecutor chose to prosecute this defendant for only one act—the sale of stimulants. Therefore, I believe the testimony and evidence should have been confined to that transaction only; and further, that reversible error was committed when evidence of the marijuana and LSD was admitted. Likewise, I do not believe this evidence falls within the rule of Young v. State, Okl.Cr., 446 P.2d 79 (1968), cited in this Court's decision in Brown v. State, Okl.Cr., 487 P.2d 963 (1971).

And lastly, notwithstanding this Court's decision in Freshour v. Turner, supra, to which I dissented, this defendant was not an adult. He was a junior in high school, sixteen years of age, and to my way of thinking, was entitled to have been considered as a juvenile prior to standing trial.

Therefore, for the foregoing reasons, I respectfully dissent to the majority decision herein.

BLISS, Judge (specially concurring):

I concur in the opinion of Judge Bussey, although careful consideration has been given the persuasive dissenting opinion of Judge Brett. I think the entire record in this case justifies the verdict, and that the defendant had a fair and impartial trial.

However, appellant's attention is directed to the provisions of 22 O.S.1971, § 994.