## LUTFY v. UNITED STATES.
### No. 13199.

United States Court of Appeals
Ninth Circuit.

Sept. 5, 1952.

Darrell R. Parker, Phoenix, Ariz., for appellant.

Frank E. Flynn, U. S. Atty., E. R. Thurman, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

DRIVER, District Judge.

This is an appeal from a judgment of conviction of violation of the Federal Narcotics Laws.[1] The only question presented is whether the trial court erred in declining to instruct the jury on the defense of entrapment. Appellant relied upon that defense and requested several instructions, which, as appellee concedes, correctly stated the law. The court refused to give any of them and did not give any instruction on the subject of entrapment. Appellant took adequate and timely exception.

We need not recite the facts in detail. We think it will serve our purpose to summarize only the testimony given by appellant in his own behalf. His testimony was disputed in many important particulars by the Government's witnesses, it is true, but it was the exclusive function of the jury to pass upon the credibility of the witnesses and resolve the conflict. The jury had the right to believe appellant's testimony and if, at face value, it supported the defense of entrapment, the factual issue was one for the jury; and an appropriate instruction on the law should have been given.

According to appellant's testimony, some time in 1946, one William R. Young approached him and struck up an acquaintance. Young and appellant became close friends and drinking companions. Young also met appellant's wife and called at appellant's home almost daily, sometimes in company with his own wife and two small children. He would come into appellant's house without knocking, help himself to drinks of whiskey or beer, which were generally kept there, and if he was hungry, would go to the ice box and help himself to the food.

Unknown to appellant, Young was a special employee of the Federal Bureau of Narcotics. On a number of occasions, when he and appellant were drinking together, Young would bring up the subject of narcotics and ask whether appellant knew where they could get some heroin. Appellant told Young that he knew nothing about narcotics and "didn't want anything to do with them." On one occasion, Young called at appellant's house with a Chinese gentleman, whom he introduced as George Wong, "A big night club owner in San Francisco." Wong gave Young some money and the latter went out to a liquor store and brought back a bottle of Scotch whiskey. Young took appellant out in the kitchen, poured a "double shot" and told him that Wong had "a lot of money" and a blonde mistress who was an addict in need of heroin and Wong wanted to get some for her. Young suggested that he and appellant procure some heroin for Wong. Appellant told Young, "I don't want anything to do with him," and Young and Wong left the house. Wong's true name was Gon Sam Mue. He was an agent of the Federal Bureau of Nar-

1. The indictment contained three counts. The jury returned a verdict of not guilty on Count One and guilty on Counts Two and Three. Count Two charged receipt and concealment and facilitation of concealment and transportation of a narcotic drug, 21 U.S.C.A. § 174, and Count Three charged the sale, dispensation, and distribution of a narcotic drug. 26 U.S.C.A. § 2553(a).

cotics, and the story of his having an addict mistress was of course, a complete fabrication.

Thereafter, and on November 11, 1950, Young again called at appellant's home this time with a man whom he introduced as his friend, Harry Rankin. The stranger was, in fact, as appellant discovered after his arrest, Earnest M. Gentry, a District Supervisor of the Bureau of Narcotics. Young suggested that they go out and "get a beer," but appellant said that he was "broke" and, anyway, had to go to the hospital to see his wife, who was ill. Young insisted, and the three of them drove to a beer tavern in Rankin's automobile. There, they sat in a booth, and Rankin ordered the drinks. In the course of the ensuing general conversation, Young told appellant that Rankin was working for George Wong and was a brother of Wong's mistress, who was a narcotic addict and badly in need of narcotics. Young and Rankin both "pleaded" with appellant to procure narcotics for Rankin's sister. Appellant at first declined and said that he didn't know where to get narcotics, but they continued to importune him. After three or four beers, he gave in and, at their direction, and with funds which they supplied, purchased and brought to them the heroin mentioned in the indictment.

Appellant further testified that, prior to the incidents just related, which occurred on November 11, 1950, he had never in any way, directly or indirectly, engaged in the narcotic traffic; that he had never had any narcotics in his possession or under his control; that he had never in his life been arrested; and that he did not even have any knowledge of anyone having narcotics in the State of Arizona until Young suggested that he "call Frank, the barber." He said that he had no intention of engaging in the narcotic traffic or of dealing in narcotics and procured the heroin for Young and Rankin only because they urged and insisted that he do so.

The jurors, within their rights, could have believed appellant's testimony, however incredible it might appear to the trial court or to this court. Taken as true, it is sufficient to establish the defense of entrapment. It does not show the permissible actions of enforcement officers in merely offering an opportunity to commit a criminal offense to one already engaged in a course of similar criminal conduct, or to one who has the intent or is willing to commit such an offense. Appellant's testimony portrays, rather, the conception of the criminal design and the planning of the offense by the enforcement officers, the formation of the intent in their minds, and the procurement, by misrepresentation and deceit, of its commission by appellant, an otherwise law-abiding, innocent person, who had no intent to commit the offense and no disposition to commit it until he was induced to do so by the enforcement officers. On such a showing, appellant was entitled to have the jury properly instructed on the law covering his defense of entrapment.[2]

Reversed and remanded for a new trial.

2. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Woo Wai v. v. United States, 9 Cir., 223 F. 412; Driskill v. United States, 9 Cir., 24 F.2d 525; Ryles v. United States, 10 Cir., 183 F.2d 944; and cf. United States v. Markham, 7 Cir., 191 F.2d 936.