467 P.2d 740

The STATE of Arizona, Appellee,

v.

Frederick A. BOCCELLI, Appellant.

No. 2034.

Supreme Court of Arizona,
In Banc.

April 7, 1970.

H. W. Howard, Tucson, for appellant.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, Rose Silver, Pima County Atty., William J. Schafer, III, Former Pima County Atty., David G. Dingeldine, John J. Kramer, Pima Deputy County Attys., Tucson, for appellee.

**STRUCKMEYER, Vice Chief Justice.**

Appellant, Frederick A. Boccelli, was charged with the crime of unlawful sale of marijuana, in violation of A.R.S. § 36–1002.07, and convicted after a jury trial. From the conviction he has appealed urging the defense of entrapment.

On April 13, 1968, appellant, Frederick A. Boccelli, left work at approximately 6:00 p. m. He picked up a friend, a woman, on the way home and the two went directly to his house. At approximately 6:30 p. m., one Gaylord Junkins, who was a casual acquaintance of the appellant, knocked on the door and was invited into the living room. Unknown to the appellant, Junkins was working for the Arizona State Narcotics Bureau, being described in the testimony at the trial as an "informer." Junkins asked the appellant if he wanted to buy a "lid" (approximately one ounce) of marijuana. Appellant replied, "No, I don't have the money."

Junkins then asked appellant if it was all right if Junkins left the marijuana at the appellant's house because Junkins wanted to look for another buyer and did not want to carry it around on his person. Appellant replied affirmatively and Junkins left the house, after placing the marijuana on a table in the living room. Upon leaving appellant's home, Junkins went to what was apparently a pre-arranged rendezvous with Al Heinze, a narcotics agent for the State of Arizona. Heinze and Junkins then met with Gary Richardson, another narcotics agent for the State. Seemingly Richardson had been told by Heinze earlier in the day that a meeting had been "lined up" with appellant Boccelli.

Richardson and Junkins then went to appellant's home. They arrived there at approximately 7:05 p. m., thirty minutes after Junkins had left the house. Junkins introduced Richardson to appellant and left the room in accordance with a pre-arranged plan between Richardson and Junkins. Richardson then asked the appellant "if he had the grass?" Appellant answered, "Yes, it's on the table." Richardson went to the table and picked up a plastic bag containing a green, leafy material. He asked appellant if this was what he was talking about and appellant answered affirmatively. Richardson testified that he next asked the appellant "how much he wanted for it, at which time he said ten dollars." They subsequently agreed on $9.25 because that was the amount Richardson had in change and the $9.25 was handed to appellant.

Appellant testified that he put the $9.25 into his pocket and that he did not give it to Junkins before Richardson and Junkins left the appellant's home shortly thereafter. The green, leafy material was subsequently tested by the Narcotics Enforcement Division of the State of Arizona and found to be marijuana. The record is clear that up to this time appellant had no prior criminal charges brought against him either for narcotic offenses or otherwise.

■ The defense of entrapment is founded on the public policy that the tempting of innocent persons into violations of the law by enforcement officers will not be tolerated. The Supreme Court of the United States in a leading case said:

"In Sorrells v. United States, * * * this Court firmly recognized the defense of entrapment in the federal courts. The intervening years have in no way detracted from the principles underlying that decision. The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.' 287 U.S. [435], at page 442, 53 S.Ct. [210], at page 212, [77 L.Ed. 413]. Then stealth and strate-

gy become as objectionable police methods as the coerced confession and the unlawful search. Congress could not have intended that its statutes were to be enforced by tempting innocent persons into violations." Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 820–821, 2 L.Ed.2d 848.

■ This court has held that in order to be a valid claim of entrapment, there has to exist activity by the State in the nature of an inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient, State v. Duplain, 102 Ariz. 100, 425 P.2d 570. The criminal conduct must be the product of the creative activity of law enforcement officials, State v. Rabon, 100 Ariz. 344, 414 P.2d 726.

■ We have emphasized that a crucial element of the defense of entrapment is that the intent to commit the crime must not arise in the mind of the accused, and the burden is on the prosecution to prove that the intent originated with the accused, State v. Hernandez, 96 Ariz. 28, 391 P.2d 586. If the defense of entrapment is raised, the prosecution must establish beyond a reasonable doubt that the accused was not entrapped into committing the offense, Notaro v. United States, 9th Cir., 363 F.2d 169.

■ Entrapment is a question for the jury unless there is no evidence to support the defense, State v. Reyes, 99 Ariz. 257, 408 P.2d 400, or unless uncontradicted testimony makes it patently clear that an otherwise innocent person has been induced to commit the acts. In this latter event, entrapment is established as a matter of law, State v. Rabon, supra. We think here that entrapment is established as a matter of law.

■ The sum of the uncontradicted testimony is that the State's agents supplied all the ingredients of the offense: the plan, the marijuana, the buyer, the money for the purchase. Finally, even the intent to sell was implanted by Richardson's inquiry of appellant as to how much he wanted for the "grass." The criminal conduct is clearly the product of the creative activity of the law enforcement officers.

■ But were it possible for reasonable men to differ with our conclusion that the intent to sell was implanted in appellant's mind by the question as to how much he, appellant, wanted for the marijuana, the evidence is uncontradicted that the State's agents placed in commerce the narcotic, the trafficking in which is absolutely forbidden by the legislative act.

As the Supreme Court of Illinois put it in People v. Strong, 21 Ill.2d 320, 172 N.E.2d 765:

" * * * While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we cannot condone the actions of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the *sine qua non* of the offense.

\* \* \* \* \* \*

We believe the record as a whole tends to show that defendant's only sale was of narcotics supplied to him by an informer in the employ of the government. This constitutes a valid defense of entrapment and the defendant should have been discharged." (Emphasis the court's) 172 N.E.2d at 768.

See also United States v. Dillet, D.C., 265 F.Supp. 980.

For the above reasons, the judgment of the lower court is reversed.

LOCKWOOD, C. J., and UDALL, McFARLAND and HAYS, JJ., concur.