474 P.2d 818

STATE of Arizona, Appellee,

v.

John Lee MARTIN, Appellant.

No. 2105.

Supreme Court of Arizona,
In Division

Oct. 1, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Clay G. Diamos, Tucson, for appellant.

HAYS, Justice.

Appellant, John Lee Martin, was tried before a jury and convicted of two counts of sale of marijuana and one count of sale of LSD. Appellant was sentenced to 5 to 6 years on each count to be served concurrently. Appellant relied upon the defense of entrapment at his trial and offered several instructions upon the law of entrapment. The court refused to give any of these instructions.

Appellant contends as his first assignment of error that his testimony revealed circumstances sufficient to support instructing the jury on the defense of entrapment even though the testimony was contradicted by other evidence. With this position we agree. Since we find that under the circumstances of this case the court committed reversible error in refusing to instruct the jury on the defense of entrapment it is unnecessary to discuss appellant's second assignment of error.

For our purposes it will be necessary to summarize appellant's testimony. Although appellant's testimony is contradicted in many respects by other evidence "it was the exclusive function of the jury to pass upon the credibility of the witnesses and resolve the conflict." Lutfy v. United States, 198 F.2d 760, 761, 33 A.L.R.2d 879, 881 (9th Cir. 1952).

Appellant testified that on March 12, 1969, at about the noon hour, Craig Wakefield and Tamara Winstead approached him in Louie's Lower Level at the University of Arizona. Appellant testified that he had met Tamara on a prior occasion in Louie's when she introduced herself to appellant; appellant met Craig sometime after he met Tamara. Unknown to appellant, both Tamara and Craig were working for the Tucson Police Department as narcotics informers. They engaged appellant in general conversation during which time Tamara indicated that she was interested in obtaining some LSD so that she could get high; she also said that she wanted Craig to try it since he had never tried it before. Craig also said that he would like to try it. Appellant testified that he was hesitant about talking about it because he really didn't "have any desire to sell it." The topic of conversation then turned from narcotics. Shortly thereafter, Tamara and Craig left Louie's. Later that same day, about 6:00 p. m. Tamara, Craig and appellant again engaged in conversation at Louie's. Craig asked appellant if he knew where he could "score some LSD or buy LSD." Appellant said he knew where there might be some but he wasn't sure. Craig responded: "Let's go." Before leaving, Craig asked appellant if he was sure he could get it and appellant said he wasn't:

"Q. What did you say?

A. I said, 'Well, I'm not for sure, not certain,' because I was very hesitant about the whole thing.

Q. Why would you be hesitant?

A. I don't know, I was just hesitant because I didn't have the desire to sell drugs."

Appellant took Tamara and Craig to his house where he sold Craig some LSD tablets.

Appellant testified that he also sold hashish to Craig and an undercover agent for the Tucson Police Department who was with Craig. This occurred on March 21, 1969 when Tamara, Craig and the undercover agent went to appellant's residence. Craig asked appellant "if he could score."

Appellant responded that he did not want to be bothered as he was listening to music and playing with a little kid who was in the house. Appellant testified that later on Craig again asked appellant if he "knew where he could get dope." Appellant responded:

"Q. What did you say to that?

A. I said, 'Really, don't bother me right now.' Within a period of an hour he asked me four, five times.

Q. At any point after he asked you four, five times, did you acquiesce?

A. I beg your pardon?

Q. Did you acquiesce in his request?

A. Yes, I did.

Q. Did you grant his request?

A. Yes, I did.

Q. Was it after the last time he asked you?

A. Yes, I was getting very very annoyed.

Q. What did he say; how did he ask you?

A. You know, he kept asking me 'Do you know where I can get some hashish?

Q. What did you say?

A. I said, 'Yes.' "

Appellant and Craig then went into the bedroom where appellant got the hashish. Craig called the undercover agent in and told him about the hashish. Appellant sold some hashish to both Craig and the undercover agent.

During his testimony appellant indicated that he had considered Tamara and Craig as close friends. Appellant testified that appellant, appellant's girlfriend, Craig and Tamara had on several occasions slept together and had on one occasion traded partners.

This court recently considered the entrapment defense in State v. Boccelli, 105 Ariz. 495, 467 P.2d 740 (1970). We said there:

"This court has held that in order to be a valid claim of entrapment, there has to exist activity by the State in the nature of an inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient, State v. Duplain, 102 Ariz. 100, 425 P.2d 570. The criminal conduct must be the product of the creative activity of law enforcement officials, State v. Rabon, 100 Ariz. 344, 414 P.2d 726.

We have emphasized that a crucial element of the defense of entrapment is that the intent to commit the crime must not arise in the mind of the accused, and the burden is on the prosecution to prove that the intent originated with the accused, State v. Hernandez, 96 Ariz. 28, 391 P.2d 586." 467 P.2d at 742.

In Lutfy v. United States, supra, it was held to be error to decline to instruct the jury on the defense of entrapment where the testimony of the defendant revealed circumstances supporting the defense of entrapment even though the testimony was contradicted by other evidence. "The jury had the right to believe appellant's testimony and if, at face value, it supported the defense of entrapment, the factual issue was one for the jury; and an appropriate instruction on the law should have been given." 198 F.2d at 761. We have held that entrapment is a question for the jury unless there is no evidence to support the defense. State v. Boccelli, supra; State v. Reyes, 99 Ariz. 257, 408 P.2d 400 (1965).

Taken as true, appellant's testimony is sufficient to establish the defense of entrapment. Appellant's testimony indicates that the intent to commit the crimes with which he is charged was formed in the minds of Craig Wakefield and Tamara Winstead while acting as informers for the Tucson Police Department. It further indicates that they used their close personal relationship with appellant and persistent prodding to entice appellant into selling marijuana and LSD. They induced appellant to commit a crime which he would not have otherwise committed. Incredible

as appellant's testimony might appear to the trial court, the jury had a right to believe appellant. Appellant, therefore, was entitled to have the jury instructed on the law covering his defense of entrapment.

The judgment is reversed and the cause remanded for a new trial.

STRUCKMEYER, V. C. J., and McFARLAND, J., concur.