501 P.2d 378

**The STATE of Arizona, Appellee,**

v.

**John Randolph McKINNEY, Appellant.**

**No. 2252.**

Supreme Court of Arizona,
In Division.

Sept. 28, 1972.

Gary K. Nelson, Atty. Gen., by Frank Sagarino and Albert M. Coury, Asst. Attys. Gen., Phoenix, for appellee.

Mehrens & Pearce, by Craig B. Mehrens, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from jury verdicts and judgments of guilty to the crimes of offering to sell marijuana (§ 36–1002.07 A.R.S.) and possession of marijuana (§ 36–1002.05 A.R.S.). Defendant received concurrent sentences of 7 years to life for offering to sell and 7 to 10 years for possession of marijuana. Defendant also appeals from the denial of his motion for a new trial.

The defendant raises several questions on appeal, but we feel it necessary to answer only one question: Did the uncontradicted testimony show entrapment as a matter of law?

The facts necessary for a determination of this matter are as follows. On 11 August 1969 Federal Narcotics Agent Arthur J. Fluhr received a telephone call from a government informant, who put the defendant on the phone. As a result of their conversation, a meeting took place the next day at the Smuggler's Inn, a Phoenix, Arizona, restaurant, at which Agent Fluhr, Agent Jordon (also a Federal Narcotics Agent), the informant, and the defendant were present. Shortly after the conversation was begun, Agent Fluhr, who was acting the role of a New York supplier, asked the informant to leave. After the informant left, the two narcotics agents ne-

gotiated with the defendant for the sale of 240 kilos of marijuana to take place later that afternoon. However, that sale never took place as the defendant failed to appear on the afternoon of the 12th.

On the morning of 14 August 1969 Agent Fluhr received another phone call from the same informant who again put defendant on the phone. Defendant apologized for failing to appear on the 12th, explaining that some of his marijuana had been stolen. Defendant offered to sell Agent Fluhr 47 kilos which he said was all he had left. Agent Fluhr, after stating he was not accustomed to buying such small amounts, agreed to buy the 47 kilos that afternoon.

At about two o'clock on the afternoon of 14 August 1969 defendant McKinney, driving the informant's car, met the agents in the parking lot of the Park Central Shopping Center. Defendant opened up the trunk of the informant's car, and then went around to the passenger's side of the agents' car and asked Agent Fluhr for the money. Agent Fluhr told the defendant to get inside the car, and, once the defendant was inside the car, Agent Fluhr arrested him. Although the arrest was made by agents of the Federal Bureau of Narcotics and Dangerous Drugs, the matter was filed in the State court for trial. Trial commenced in the Maricopa County Superior Court on 8 September 1970.

At the preliminary hearing the defendant attempted unsuccessfully to obtain the name of the informant. Prior to trial defendant's counsel moved the court to require the prosecution to disclose the identity of the informant as a material witness to defendant's case. This motion was denied. The identity of the informant eventually became known during trial, but his whereabouts was not discovered by defendant's attorney until the trial was completed.

At the trial defendant took the stand in his own defense and related a story of entrapment. It was defendant's version that the informant had been a seller or dealer in narcotics, that he had asked defendant

to make the particular sale with which we are concerned here, that the informant made all the initial contacts with the government agents, and that the informant actually supplied the marijuana to be sold on the 14th of August. These facts were not directly contradicted at trial. Concerning the automobile defendant was driving the Federal Narcotics Agent testified as follows:

"Q Okay. The informant that you talked about on direct examination and the one that I have asked you questions about, his name is Mike Marcum?

"A That's correct.

"Q Now, Agent Fluhr, Mr. McKinney drove up ot meet you in a '67 Cutlass, I believe you testified, is that correct?

"A That's correct.

"Q That Cutlass had California license plates on it, did it not?

"A I believe it did.

"Q And that Cutlass was Mike Marcum's car, was it not?

"A Absolutely, no question.

"Q It was his car?

"A Yes, sir.

"Q So then you are saying, your testimony is that the defendant McKinney backed up in Mike Marcum's car, in the back of Mike Marcum's car were these exhibits that you have, that you saw that you testified that you saw Agent Jordan taking out of the back of the car?

"A That's correct.

"Q So anything that you saw came from the back of Mike Marcum's car, did it not?

"A Yes, sir, that's correct.

"Q As a matter of fact you confiscated that car initially under whatever laws there are that allow for confiscating a vehicle when you believe there is a narcotic in it, is that correct?

"A No, sir, that is not correct.

"Q You didn't confiscate it according to those laws?

"A No, sir, I did not.

"Q You gave it back to Mr. Marcum, did you not?

"A I did."

After the close of the evidence, counsel for defendant moved for a directed verdict of acquittal on the basis of entrapment. This motion was denied. An instruction was given, however, on the issue of entrapment. The jury returned verdicts of guilty for both possession and offer to sell marijuana. Defense counsel moved for a new trial and for motion in arrest of judgment supported by two affidavits which stated in part as follows:

"That the name of the informant was not revealed to him until during the trial of said matter;

"That he requested federal agent Arthur Fluhr to tell him the whereabouts of the informant but that Arthur Fluhr informed him that he had no whereabouts of the informant, Mike Marcum;

"That subsequently after the trial, agent Philip Jordan told Affiant that it was his understanding that Michael Marcum was in the Tucson area;

"That on or about September 23, 1970 Affiant again talked to Arthur Fluhr and Arthur Fluhr related to Affiant that it was his understanding that Michael Marcum was in jail in Arizona;"

And:

"That for several weeks, after learning that the informer in the above-entitled action, MIKE MARCUM, was in the State of Arizona, affiant has been attempting to locate him.

"That finally, affiant located and personally talked to Mike Marcum on October 19, 1970 at approximately 6:00 o'clock P.M.

"That Mike Marcum told affiant that he would testify under oath that he furnished and delivered approximately forty-five (45) kilos of marijuana to defendant, JOHN RANDOLPH McKINNEY on the day that defendant attempted to sell that marijuana to agent, Philip Jordan.

"Mike Marcum further told affiant that he would give affiant an affidavit to this effect, or, if need be, would testify to this effect on October 20, 1970. Mike Marcum further told affiant that he informed against defendant, JOHN RANDOLPH McKINNEY."

The State did not controvert the affidavits nor file opposing memoranda. The defendant also moved for a continuance "in order to obtain the presence of Mr. Marcum as a witness" which was also denied.

■■ A defendant who wishes to avail himself of a defense of entrapment must admit the substantial elements of the crime and one who denies knowledge of the crime may not raise the defense of entrapment. United States v. Mehciz, 437 F.2d 145 (9th Cir. 1971); Munroe v. United States, 424 F.2d 243 (10th Cir. 1970). In order to have a valid claim of entrapment, "there has to exist activity by the State in the nature of an inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient. State v. Duplain, 102 Ariz. 100, 425 P.2d 570. The criminal conduct must be the product of the creative activity of law enforcement officials, State v. Rabon, 100 Ariz. 344, 414 P.2d 726." State v. Boccelli, 105 Ariz. 495, 497, 467 P.2d 740, 742 (1970). See also State v. Martin, 106 Ariz. 227, 474 P.2d 818 (1970).

■ In cases wherein narcotics are supplied by the state, the courts are in agreement that the state is providing more than the opportunity to commit the offense, they are also providing the very means for the commission of the crime. The Supreme Court of Illinois stated:

"* * * While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we

cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the *sine qua non* of the offense.

\*　\*　\*　\*　\*　\*

"We believe the record as a whole tends to show that defendant's only sale was of narcotics supplied to him by an informer in the employ of the government. This constitutes a valid defense of entrapment and the defendant should have been discharged." People v. Strong, 21 Ill.2d 320, 326, 172 N.E.2d 765, 768 (1961).

And our court has stated:

"But were it possible for reasonable men to differ with our conclusion that the intent to sell was implanted in appellant's mind by the question as to how much he, appellant, wanted for the marijuana, the evidence is uncontradicted that the State's agents placed in commerce the narcotic, the trafficking in which is absolutely forbidden by the legislative act." State v. Boccelli, supra, 105 Ariz. at 497, 467 P.2d at 742.

■ The fact that Marcum was the informant was material to defendant's case. If he was not the informant defendant's claim of entrapment had no merit. However, if he was the informant then the issue of entrapment was a valid one for the defendant. We agree with the general principle of law that the one seeking the identity of an informant has the burden of showing why he needs that information:

"We emphasize that a defendant seeking to discover the identity of an informant bears the burden of demonstrating that, 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' (citations omitted) That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. 'No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. It is the deprival of the defendants of the opportunity of producing evidence which *might* [original emphasis] result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.'" People v. Garcia, 67 Cal.2d 830, 64 Cal.Rptr. 110, 116, 434 P.2d 366, 372 (1967). See also 12 Stanford Law Review 256–264.

Also, in the case of a possible entrapment defense, the defendant is placed in a very weak position in trying to bring that fact to the court and jury. The evidence concerning the entrapment are peculiarly within the knowledge of the State.

■ For these reasons, it is generally held that entrapment is an affirmative defense, but once the issue is raised by the defendant the State has the burden of proof. United States v. Brown, 421 F.2d 1283 (9th Cir. 1970).

"If the defense of entrapment is raised, the prosecution must establish beyond a reasonable doubt that the accused was not entrapped into committing the offense, Notaro v. United States, 9th Cir., 363 F.2d 169." State v. Boccelli, supra, 105 Ariz. at 497, 467 P.2d at 742.

We agree with the Court of Appeals for the 5th Circuit:

"If the Informer's testimony would tend to disprove the Defendant's story, it was up to the government to produce him. The Defendant having testified to facts which establish a defense as a matter of law, the government has the duty to come forward with contrary proof, if it is to carry its ultimate burden of prov-

ing guilt beyond all reasonable doubt. United States v. Groessel, 440 F.2d 602 (5th Cir. 1971)." United States v. Bueno, 447 F.2d 903 (5th Cir. 1971).

We also agree with the reasoning as set forth by the United States District Court for the Southern District of New York:

> "Defense counsel admits that if defendant had not charged that he got the illegal merchandise from the seller-informer, defendant would not have any entrapment defense because of his ready complaisance. The charge having been made, the burden shifted to the Government to show that defendant did not receive the narcotics from Westbrook (the informant), thus proving that the Government did not initiate the sale and that defendant was 'awaiting any propitious opportunity to commit the offense'." United States v. Dillet, 265 F.Supp. 980, 986 (U.S.D.C. New York 1966).

 Whenever the evidence is sufficient to support a valid instruction for entrapment it must be given, State v. Rabon, 100 Ariz. 344, 414 P.2d 726 (1966), State v. Martin, 106 Ariz. 227, 474 P.2d 818 (1970), but where the evidence raises a substantial and reasonable defense of entrapment and the State does nothing to rebut or contradict the defense, entrapment as a matter of law is established. Boccelli, supra. In the instant case, not only did the State fail to rebut the defense of entrapment once it was substantially raised, but the inference is strong that by refusing to reveal the name of the informant until trial and by not making him available for examination at trial, the State has knowingly prevented defendant from further presenting his defense.

The defendant having admitted the substantial elements of the crime and having raised a substantial defense of entrapment, we do not feel it amiss to require the State to rebut that defense. We believe that under the uncontroverted facts herein that the defendant has shown entrapment as a matter of law and it was error for the trial court not to direct a verdict for the defendant at the close of testimony.

Judgment reversed and the trial court is directed to enter a verdict of acquittal.

STRUCKMEYER, J., concurs.

HOLOHAN, J., specially concurs.