531 P.2d 188
**STATE of Arizona, Appellee,**
v.
**Ben Caldera RUBINO, Appellant.**
**No. I CA–CR 694.**

Court of Appeals of Arizona,
Division 1,
Department A.
Jan. 30, 1975.

**144**

Bruce E. Babbitt, Atty. Gen. by Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Paul H. Broadwell, Phoenix, for appellant.

## OPINION

DONOFRIO, Judge.

This appeal is from a judgment and conviction of Ben Rubino for Possession of Marijuana For Sale (A.R.S. § 36–1002.-06(A), and conviction on two counts of Possession of a Pistol by a Criminal (A.R.S. § 13–919). The appeal raises three basic questions for consideration:

1) Was the defense of entrapment applicable to the possession of marijuana for sale charge such that the trial court committed error in not requiring the prosecution to reveal its informant?

2) Was the search warrant issued on the police officer's affidavit based on probable cause?

3) Were the jury instructions concerning the entrapment defense reversible error?

Approximately two weeks before his arrest on August 12, 1973, the appellant, Ben Rubino, met with two persons known as Gregg Daye and Meliscio Abalongue and purchased approximately two pounds of marijuana. Testimony indicates that Rubino had heard from others that these two were selling marijuana and he voluntarily sought them out for the purchase. On August 10, 1973 Rubino was contacted by Daye, Abalongue, and another person known as Barbara Boucher, and offered a "deal" whereby the three would supply Rubino with heroin and customers if he would handle the sales of the heroin. The profits from the sale of heroin were to be divided among the participants. In a subsequent meeting the "deal" was affirmed, and on the afternoon of Sunday, August 12, 1973, Barbara Boucher and Abalongue delivered the heroin to Rubino at his residence. Later that day a Phoenix police officer presented a sworn affidavit to a local justice of the peace and was granted a search warrant for Ben Rubino's person and his residence. A search of Rubino and his residence was made that night which uncovered 217 grams of heroin, 339 grams of marijuana, and two .22 caliber pistols located under a mattress in the Rubinos' bedroom.

Ben Rubino was arrested and charged with Possession of Narcotic Drugs For Sale (A.R.S. § 36–1002.01(A), Possession of Marijuana For Sale (A.R.S. § 36–1002.-06(A), and two counts of Possession of a Pistol by a Criminal (A.R.S. § 13–919). Mary Rubino, his wife, was arrested and charged with Possession of Narcotic Drugs For Sale, and Possession of Marijuana for Sale.

At trial the charges against Ben and Mary Rubino for Possession of Narcotic Drugs For Sale (heroin) were dismissed by the court in view of the fact that after Ben Rubino raised the defense of entrapment, the prosecution could not, or would not, reveal its informant whose information was the basis of the search warrant. The defendants were found guilty by a jury of the remaining charges.

### THE DEFENSE OF ENTRAPMENT

We must remember that this appeal is from the marijuana and pistol convictions, and the entrapment question is raised in reference to the marijuana conviction only, since the heroin charges were dismissed. After analyzing the facts, we find that the entrapment defense was not applicable to the marijuana charge against Ben Rubino.

In the case of State v. McKinney, 108 Ariz. 436, 501 P.2d 378 (1972), the Arizo-

na Supreme Court discussed the entrapment defense:

"  *   *   * In order to have a *valid claim* of entrapment, 'there has to exist activity by the State in the nature of an inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient. State v. Duplain, 102 Ariz. 100, 425 P.2d 570. The criminal conduct must be the product of the creative activity of law enforcement officials.' (citations omitted)." (Emphasis added). 108 Ariz. at 439, 501 P.2d at 381

We do not think the facts indicate that Rubino had a "valid claim" of entrapment on the marijuana charge. First, it was assumed throughout trial that the information given by the informant to the police officer was only in relation to the heroin. The information contained in the officer's affidavit also indicates this fact. All references in the affidavit are to Rubino's possession of heroin. The affidavit is set out in full as follows:

### "INFORMANT FORM

"Between the dates 8–10–73 and 8–12, 1973, the affiant (or affiant's fellow officer) received information from a (confidential) informant. This information was as follows: That BENNIE RUBINO, a M/M, 23 years, 5'6", 160 lbs. with black hair, is in possession of heroin on his person, and in the residence known as 1115 N. 11 Street, a pink house with white trim, the front door faces west. That 'BENNIE' possessed heroin on 8–12–73, or within the past 48 hours and that 'BENNIE' is selling heroin to persons in the Phoenix, Arizona, area.

The affiant believes the informant to be reliable because: Within the past week, affiant has talked to this informant on no less than 4 occasions and received information on no less than 6 major 'Heroin' dealers, from this informant in regards to these 6 dealers' involvement in trafficking in narcotics in the Phoenix, Arizona, area.

Affiant has been able to check the information obtained from this informant, through police records, affiant's personal knowledge of persons and places named and affiant's personal knowledge of persons and places named and affiant's fellow officers and on every occasion found the information to be true, correct and reliable. Affiant has confiscated 1 oz. of heroin as direct result of information supplied by this informant. That case is pending at this time.

The affiant believes the information given him is reliable because: The informant told affiant that the informant saw with the informant's own eyes, heroin inside the residence described as 1115 N. 11 Street, a pink house, with white trim, and saw heroin on the person of BENNIE RUBINO, a M/M, 23 years, 5'6", 160 lbs., with black hair, on 8–12–73, or within the past 48 hours.

The informant further stated that 'BENNIE' is selling 'Heroin' to persons in the Phoenix, Arizona area.

The affiant wishes to keep the identity of said informant secret and confidential to preserve said informant's future usefulness and effectiveness to law enforcement officers and because disclosure of said identity would tend to endanger the informant's safety and well being. Affidant's basis for this statement is as follows: It has been affiant's experience that once the identity of a police informant is known, they are no longer of use as such, and that friends and relatives of persons arrested with information as to the identity of a police informant have the desire and capability to cause great bodily harm or even death to said informants.

Affiant believes that the following information demonstrates good cause for permitting this warrant to be served between 10:00 PM and 6:30 AM: Due to the nature of the contraband, affiant

feels the contraband may become non-existent through sale, transfer, or consumption and to better insure the seizure of said contraband and minimize hazards to officers, this warrant should be served at the most opportune time.

Wherefore affiant prays that a search warrant be issued commanding that an immediate search be made of the persons, premises and buildings, and vehicles described herein for the property and things herein described, and that the same be retained in the custody of affiant or in custody of the agency which affiant represents and disposed of according to law, pursuant to ARS 13–1450.

> /s/ Leon Ivie, Affiant, Serial #1602, Phx. PD

SUBSCRIBED AND SWORN to before me this 12th day of August, 1973.

> /s/ Al J. Flood, J. P. of E. Phx #1 Court, 7:07 PM"

■ The fact that two weeks had elapsed between the marijuana purchase and Rubino's arrest would indicate that perhaps other persons could have become aware of the marijuana in Rubino's house, other than Daye and Abalongue who made the sale. We distinguish this case from the case of State v. Fox, 110 Ariz. 77, 515 P.2d 322 (1973), which is relied on by appellants. In that case the trial court ordered the revealing of the name of the informant due to the fact that it was established that only two persons were aware of the possession of narcotics and those persons were the sellers. In our case, at least Barbara Boucher, and perhaps others, were aware of the marijuana possession and the heroin. There is no testimony that the sellers and suspected informants, Daye and Abalongue, were the only persons who entered the Rubino house during his possession of the marijuana and heroin.

Furthermore, the police officer, Leon Ivie, testified without contradiction that he did not become acquainted with the informant until *after* the sale of marijuana.

The evidence indicates that it was Ben Rubino who voluntarily sought out Daye and Abalongue to purchase the marijuana. His testimony indicated the following:

"Q How did it come about that you went to that apartment to pick up marijuana?

A I found out—somebody told me that —let me see, who was it—I found out that they had grass and—somebody told me they were selling grass.

Q So you went there for the purpose of buying grass?

A Well, they were selling it.

Q And that's why you went there, though?

A Yes.

Q They didn't come to you and say, 'Here, buy this grass'?

A No."

For these reasons we do not think the defense of entrapment was a valid claim by Rubino as to the marijuana charge, and the trial court was correct in refusing to order the prosecution to reveal its informant as to that charge.

### VALIDITY OF THE SEARCH WARRANT

■ The second question raised by appellant is the validity of the search warrant obtained by Officer Ivie based on the information from his informant as contained in the affidavit noted earlier in the opinion. The search warrant was for the seizure of heroin, but it cannot be disputed that contraband such as the marijuana and the pistols could be seized during the search, if the search was valid from the beginning. The question is whether the facts offered in the affidavit justified the issuance of the warrant. In the case of State v. Sabari, 109 Ariz. 553, 514 P.2d 474 (1973), the Arizona Supreme Court joined the majority of jurisdictions in holding that where the affidavit for a search warrant is sufficient upon its face to support the issuance of a warrant, the court will

not hear a challenge to that issuance based on peripheral issues. In accordance with that standard, we find this affidavit to be sufficient upon its face, as that sufficiency test is established by the cases of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). That test is basically two-pronged. The magistrate must be presented with 1), facts showing the informant is reliable, and 2), the underlying circumstances on which the substance of the tip is made.

■ Applying this test to the affidavit, we think reliability of the informant is shown by the fact that his previous information given to the police was checked by them and found to be true as illustrated in paragraphs three and four of the sworn affidavit, supra. The fact that the informant in this case personally observed the heroin in Ben Rubino's residence and on his person, and his apparent familiarity with heroin, (he gave information to police concerning six heroin dealers in Phoenix, and his information led directly to the seizure of one ounce of heroin by affiant) is sufficient to show the underlying facts on which the substance of the tip was made and the informant's reliability as required by Aguilar and Spinelli.

■ Appellant relies on the case of State v. James, 10 Ariz.App. 394, 459 P.2d 121 (1969), in which case an affidavit contained the statement that informant "is familiar with marijuana." These are not "magic words" which must be contained in an affidavit to show the informant's familiarity with the narcotic. The affidavit in the present case had sufficient facts to show the informant was familiar with heroin, and its failure to state expressly that the informant was familiar with heroin was not required. State v. Jung, 19 Ariz. App. 257, 506 P.2d 648 (1973); Aguilar v. Texas, supra; Spinelli v. United States, supra.

Examining this affidavit on its face, we hold that there were sufficient facts before the magistrate that established probable cause for the issuance of a search warrant to search Ben Rubino's residence and person. Therefore, the seizure of the marijuana and pistols during the search for heroin was valid.

## THE JURY INSTRUCTION ON ENTRAPMENT

■ Both parties to this appeal addressed the issue of the jury instruction on entrapment, and although its resolution is not necessary to disposition of the appeal, we feel that it should be discussed briefly. The record shows that the following instruction was given to the jury on the question of entrapment defense:

"The defendant has interposed the defense of entrapment. To constitute a defense, the entrapment must be unlawful. Unlawful entrapment means: One, that the idea of committing the crime originated with the law enforcement officers or their agents rather than with the defendant; two, they urged and induced him to commit the crime charged; and three, the defendant had no previous disposition to violate the law.

"The State has the burden of proving that there was no unlawful entrapment.

"There is no unlawful entrapment if the defendant was either engaged in similar crimes or was ready and willing to violate the law and the law enforcement officers or their agents merely afforded him the opportunity of committing the crime." (Maricopa County recommended Jury Instruction No. 222, modified).

Although the 1974 Recommended Arizona Jury Instruction concerning entrapment which eliminates the use of the "unlawful" term is seemingly better, its inclusion did not render the instruction an incorrect statement of the law, and here it is not error. In our opinion, there is not a reasonable probability that the jury verdict would have been different if the trial court had deleted the "unlawful" term from the jury instruction. State v. Stotts, 8 Ariz.App.

**148**

340, 446 P.2d 244 (1968); A.R.S. § 13–1598; Rule 21.3, Rules of Criminal Procedure, 17 A.R.S.

For the above reasons we would affirm the conviction and sentence of the appellant.

Affirmed.

OGG, P. J., and FROEB, J., concur.