STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
JOHN TALBOT, III, DEFENDANT-RESPONDENT.

Argued April 26, 1976—Decided August 9, 1976.

161

*Mr. Mart Vaarsi,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Vaarsi,* of counsel and on the brief).

*Mr. Martin Newmark* argued the cause for defendant-respondent (*Mr. Newmark* on the brief).

The opinion of the court was delivered by

SULLIVAN, J. This appeal poses the issue whether entrapment is established as a matter of law if an informant, while acting in concert with an undercover police officer, but unknown to the officer and contrary to instructions, supplies the defendant with heroin for the purpose of then arranging a sale of the heroin by defendant to the undercover officer, which sale is then consummated. We hold that it is.

Defendant, John Talbot, III, was convicted of selling heroin to an undercover police officer, the jury having re-

jected his defense of entrapment. The facts adduced at trial were essentially as follows. On February 14, 1973 one Anthony Federici was arrested by the Wayne police on a narcotics charge. At police headquarters he was told that if he cooperated with the police in effecting arrests of drug dealers the police would do everything within their power to help him to avoid a jail sentence on the pending charge. Federici, who had previously served as an informant, agreed to arrange transactions for the police. Although Talbot was his good friend, Federici named him, among others, as a person from whom purchases could be made. This suggestion met with approval although Federici received no specific instructions from the police as to how to proceed.

Federici, who testified as a defense witness, said that he went to New York, obtained some heroin and then telephoned defendant and offered to sell it to him. Defendant, however, refused to buy. The following day, Federici again telephoned defendant and renewed the offer saying he needed money. This time defendant agreed and Federici went to the Talbot farm in Smoke Rise and sold him a packet of heroin for $30.

The day after the sale, Federici telephoned defendant and asked him to resell the heroin to a friend of Federici's brother who had just arrived in town "from somewhere out west" and wanted some heroin but could not make any connections. Defendant's reply was "absolutely not." Federici called again the next day and, after some conversation, defendant said he would sell the rest of the heroin (defendant had "snorted" some of it) but only to Federici.

On February 19, 1973, Federici notified the police that he had arranged a "buy" from defendant. The next day he and Jack Cole, an undercover agent of the State Police Narcotics Bureau, went to the Talbot farm where they met defendant. After Cole was introduced as a friend of Federici's brother, defendant sold a packet of heroin to Cole for $20. Cole explained to defendant that he had been a large drug dealer in Michigan but had been forced to leave by

the police and that he was trying to "set up" in New Jersey to sell drugs. He told defendant he had "a lot of outlets" and was looking for a supplier. According to Cole, defendant then told him that he was capable of supplying ounces of heroin.[1]

One other item of evidence is relevant to the discussion. When Federici was arrested by the police on February 14, 1973, he was questioned about a person who was then under investigation as an international drug dealer. Federici said that he had never heard of the person but suggested that, if the police wished, he would sell the person some drugs that could later be bought by an undercover agent. According to the officer the suggestion was rejected, Federici being told, "No, we don't operate that way."

In an opinion reported at 135 *N. J. Super.* 500 (1975), the Appellate Division reversed the judgment of conviction and ordered a new trial. The basis of the Appellate Division ruling was that the trial court had committed prejudicial error in charging the jury to the effect that there could be no entrapment unless the informant in furnishing the heroin to the defendant for sale to the undercover officer "was acting with the consent of the police and as their agent."

The Appellate Division rejected the notion that where the State uses an informant in its pursuit and discovery of criminal activity, it can avoid responsibility for the informant's unlawful actions by claiming that it did not have prior knowledge and did not give prior consent to such activity. Quoting from *Sherman v. United States,* 356 *U. S.* 369, 375, 78 *S. Ct.* 819, 2 *L. Ed.* 2d 848, (1958), it held that government cannot make use of such informant's· activity " 'and then claim disassociation through ignorance.' " 135 *N. J. Super.* at 509.

Although it reversed the judgment of conviction because it found error in the charge, the Appellate Division did

---

[1] According to the testimony, an ounce of heroin can be made into approximately 1000 bags with a street value of around $10 per bag.

not hold that entrapment had been established as a matter of law even though the testimony of defendant and Federici, who testified on defendant's behalf, was uncontradicted. Instead, it held that the credibility of such testimony was open to doubt in light of defendant's obvious self-interest together with the fact that Federici was his good friend. These circumstances along with other substantial evidence of defendant's prior narcotics activity, and his statement to the undercover officer that he could supply ounces of heroin, led the Appellate Division to conclude that a jury question existed as to the truth of the entrapment evidence. The State's petition for certification was granted. 69 *N. J.* 81 (1976). We affirm.

■■ Entrapment is an affirmative defense. A defendant who claims entrapment has the burden of presenting evidence in support of this defense. However, once this is done, the issue ordinarily is one for the jury which should be charged that the State must prove beyond a reasonable doubt not only that defendant committed the crime, but that he was not entrapped into doing so by the police. *State v. Dolce,* 41 *N. J.* 422, 432 (1964).

■ Entrapment occurs when the criminal conduct was the product of the creative activity of law enforcement officials. *Sherman v. United States, supra,* 356 *U. S.* at 383–384, 78 *S. Ct.* 819. As we said in *Dolce, supra,* 41 *N. J.* at 431, "courts will not permit their process to be used in aid of a scheme for the actual creation of a crime by those whose duty it is to deter its commission." However, this does not mean that the police may not use artifice to trap the unwary criminal. Rather, entrapment is concerned with the manufacturing of crime by the police and the ensnaring of unwary innocents. *Sherman, supra,* 356 *U. S.* at 372, 78 *S. Ct.* 819. To date the United States Supreme Court has not rested the defense of entrapment on constitutional grounds. *Sorrells v. United States,* 287 *U. S.* 435, 53 *S. Ct.* 210, 77 *L. Ed.* 415 (1932) ; *Sherman v. United States, supra; United States v. Russell,* 411 *U. S.* 423, 93 *S. Ct.* 1637, 36 *L. Ed.* 2d 366

(1973). Instead, these cases all involve federal criminal statutes and construe such statutes as prohibiting law enforcement officers from instigating a criminal act by otherwise innocent persons, although a trap can properly be set for the unwary criminal. Accordingly, where the defense of entrapment is raised in a federal trial, the inquiry focuses on the intent or predisposition of the defendant to commit the crime rather than on the alleged impropriety of the government's conduct. *Russell, supra,* at 433–436, 93 *S. Ct.* 1637. Under this subjective approach the defendant's predisposition is a critical jury issue.

The latest decision by the United States Supreme Court dealing with the defense of entrapment in a federal trial adheres to the subjective approach. In *Hampton v. United States,* 425 *U. S.* 484, 96 *S. Ct.* 1646, 48 *L. Ed.* 2d 113 (1976), the defendant, although conceding a predisposition to commit the crime in question (sale of heroin), argued that entrapment as a matter of law had been established if the jury believed his testimony that a government informer had supplied him with the contraband.

A majority of the Supreme Court rejected this contention. Three of the justices in a plurality opinion held that where defendant conceded a predisposition to commit the crime in question, not only is the defense of entrapment unavailable but also a violation of due process cannot properly be claimed. Two other justices concurred in the judgment on the ground that the practicalities of combating narcotics traffic frequently require law enforcement officers legitimately to supply "some item of value that the drug ring requires," quoting from *Sherman, supra,* 411 *U. S.* at 432, 93 *S. Ct.* at 1643. However, these justices found it unnecessary to hold that a violation of due process could never be claimed by a predisposed defendant no matter how outrageous the police behavior, nor would they foreclose reliance on the court's supervisory power to bar conviction of a predisposed defendant because of outrageous police behavior. Accordingly, they were unwilling to conclude that simply be-

cause predisposition was shown, neither due process principles, nor the court's supervisory power, could support a bar to conviction regardless of the nature of the police behavior.

Three justices dissented in *Hampton*. They would not use the subjective "predisposition" approach but rather would focus the inquiry on the propriety of the police conduct. So doing, they would bar a conviction as a matter of law where the subject of the criminal charge was the sale of contraband provided to the defendant by a government agent.

*Hampton* and the other Supreme Court decisions mentioned above were concerned with construction of the federal statutes and to some extent with the supervisory power of the federal courts to bar federal convictions because of "outrageous" police conduct. Such rulings, however, are not controlling on state courts which are free to formulate and establish the contours of the defense of entrapment for their own jurisdictions.

The few cases in New Jersey dealing with entrapment have generally adverted to the subjective standard of inquiring into a defendant's predisposition to commit the crime, or existing criminal intent. *State v. Stein*, 70 *N. J.* 369, 360 A. 2d 347 (1976); *State v. Dolce, supra*, 41 *N. J.* at 433; *State v. Rosenberg*, 37 *N. J. Super.* 197 (App. Div. 1955). However, these cases did not involve egregious police action and therefore were not concerned with the question of whether such extraordinary conduct would also be a relevant factor. This case presents that issue.

Ordinarily a defendant's predisposition to commit the crime is a relevant factor when the defense of entrapment is raised. As was said in *State v. Dolce, supra*, 41 *N. J.* at 433, "[p]redisposition is evidenced by previous conviction of crime, reputation for criminal activities, ready compliance with minimal inducement, or easy yielding to the opportunity to commit the offense." However, as the part played by the State in the criminal activity increases, the importance of the factor of defendant's criminal intent

decreases, until finally a point may be reached where the methods used by the State to obtain a conviction cannot be countenanced, even though a defendant's predisposition is shown. Whether the police activity has overstepped the bounds of permissible conduct is a question to be decided by the trial court rather than the jury.

We hold that where an informer or other agent generally acting in concert with law enforcement authorities, furnishes a defendant with heroin for the purpose of then arranging a sale of the heroin by the defendant to an undercover officer, which sale is then consummated, defendant has been entrapped as a matter of law even though predisposition to commit the crime may appear, and notwithstanding that the furnishing of the heroin is unknown to and contrary to the instructions of the law enforcement authorities. Those authorities, having set the agent to work in enticing the defendant, the prosecution should bear the onus of the means selected by the agent. See *State v. McKinney*, 108 *Ariz.* 436, 501 *P.* 2d 378, 381–382 (1972); *State v. Boccelli*, 105 *Ariz.* 495, 467 *P.* 2d 740, 742 (1970); *People v. Strong*, 21 *Ill.* 2d 320, 172 *N. E.* 2d 765, 768 (1961); *State v. Overmann*, 220 *N. W.* 2d 914, 916–917 (Iowa Sup. Ct. 1974); *Jones v. State*, 285 *So.* 2d 152, 159 (Miss. Sup. Ct. 1973); *State v. Sainz*, 84 *N. M.* 259, 501 *P.* 2d 1247, 1248 (Ct. App. 1972); *Lynn v. State*, 505 *P.* 2d 1337, 1344 (Okla. Crim. App. 1973). But see Proposed New Jersey Penal Code § 2C:2–12 (1971).

This ruling is bottomed on the principle of fundamental fairness. Government properly may use artifice to trap unwary criminals, particularly in its efforts to stamp out drug traffic. However, the methods employed by the State must measure up to commonly accepted standards of decency of conduct to which government must adhere. The manufacture or creation of a crime by law enforcement authorities cannot be tolerated. Here, if defendant's and Federici's testimony be given credence, defendant's criminal conduct, from beginning to end, was the product of the creative activity

of the police. *Sherman, supra, 356 U. S.* at 383–384, 78 *S. Ct.* 819.

■ However, we agree with the Appellate Division for the reasons given in its opinion that entrapment was not established as a matter of law in this case and that a jury question exists as to the credibility of the entrapment evidence.

Affirmed.

SCHREIBER, J. (concurring). The entrapment defense is comparable to a plea of confession and avoidance. The defendant admits that he has violated the law and seeks to avoid responsibility because of the activity of the law enforcer. Unquestionably the police may properly use undercover schemes and devices to aid in the apprehension of criminals. On the other hand all would agree that the creation of circumstances by the government to trap and cause an otherwise innocent person to commit a crime is reprehensible. At the outset attention should be focused on conduct. Entrapment is a viable defense if the government's activity was such that under the circumstances an otherwise innocent person was thereby induced to commit the crime. *Sherman v. United States,* 356 *U. S.* 369, 78 *S. Ct.* 819, 2 *L. Ed.* 2d 848 (1958); *Sorrells v. United States,* 287 *U. S.* 435, 448, 53 *S. Ct.* 210, 77 *L. Ed.* 413, 420 (1932); *State v. Stein,* 70 *N. J.* 369, 390 (1976).

The polestar of police activity should be to detect crime and not create it. To ferret out those engaged in criminal activity and ready and willing to continue in that course of conduct is appropriate and proper. In accomplishing that end some types of criminal activity may warrant a substantial amount of undercover activity. There may well be circumstances where the authorities in order to flush out criminal activity furnish the defendant with the contraband and subsequently purchase that contraband from the defendant. *Compare United States v. Russell,* 411 *U. S.* 423, 93 *S. Ct.* 1637, 36 *L. Ed.* 2d 366 (1973). In that case to apprehend a manu-

facturer of illicit drugs, an undercover agent for the Federal Bureau of Narcotics and Dangerous Drugs supplied defendants with an essential ingredient with which to produce methamphetamine in return for one-half of the production. The defendants, after completion of the transaction, were arrested, tried and convicted. The entrapment defense was disallowed. This result was sound for the government's conduct would not reasonably have induced an innocent person to enter into the transaction, but would probably only appeal to a person engaged in an ongoing course of illicit conduct.

Professor Roger Park in a comprehensive discussion, "The Entrapment Controversy," 60 *Minn. L. Rev.* 163 (1976), comments on the rule that mandates entrapment when the authorities provide the contraband. He states:

> Nevertheless, there are circumstances in which application of the furnishing-contraband rule might interfere with legitimate law enforcement. Mechanical application of the rule would have defeated prosecution in a recent case in which officers intercepted a drug smuggler about to make a delivery to drug dealers. The officers convinced him to incriminate his customers by going ahead with the delivery. In another case, an agent who had infiltrated a large drug conspiracy was asked by the conspirators to deliver drugs to an established customer. He delivered heroin from Hong Kong to a drug dealer in California. [*Id.* at 192; footnotes omitted].

Where the government furnishes the contraband, the likelihood of affecting an innocent person is increased and the justification for an entrapment defense more readily sustainable. Under some circumstances where an informer engaged by the government furnishes the defendant with heroin for the purpose of arranging a sale by the defendant to the police and the sale occurs, entrapment may exist as a matter of law. But where the State has demonstrated the defendant's culpability as a professional engaged in the criminal enterprise, freeing that defendant by holding entrapment as a matter of law is not warranted or justified.

When the entrapment defense is raised, the status of the defendant, as noted above, is put in issue. The burden is on

the State to establish that the defendant would probably have committed the offense because of his "predisposition." *State v. Dolce,* 41 *N. J.* 422, 433 (1964). If he acted because there was implanted in his mind "the disposition to commit" the offense, then the defense has been established. *Sorrells v. United States,* 287 *U. S.* at 442, 53 *S. Ct.* at 212, 77 *L. Ed.* at 417; *State v. Dolce,* 41 *N. J.* at 430.

If evidence of predisposition is educed or a finding of predisposition is made, it may be appropriate to consider the propriety of the devices, schemes, or plans used by the police. The power and responsibility to do so rests in the court's supervisory authority, as well as in its guardianship of due process safeguards. *Hampton v. United States,* 425 *U. S.* 484, 96 *S. Ct.* 1646, 48 *L. Ed.* 2d 113, 119–122 (1976) (Powell, J., concurring). But all the circumstances, including the nature of the crime, difficulty of apprehension, and the problem of obtaining witnesses, must be considered before condemning the methods employed.

The proposed New Jersey Penal Code adheres to the view that entrapment is established if the police activity directly causes the defendant to engage in the unlawful activity by methods which create a substantial risk that the offense would be committed by persons other than those who are ready to commit it. Section 2C:2–12a(2). The Commentary of the Criminal Law Revision Commission, Vol. II (1971) acknowledges that its test cuts down the deterrent effect of the entrapment rule, because of the requirement that the government participation "as a direct result, causes" the commission of the offense. [*Id.* at 77]. "Thus, a defendant cannot take advantage of coincidental improper police conduct." [*Id.*]. This concept recognizes that if a defendant is in an illegal business and the government activity coincidentally triggers the continuance of or carrying on of that activity, entrapment is not a defense. The rule espoused by the majority substantially undercuts the proposed statutory provision.

I concur in the majority opinion that a jury question exists as to the credibility of the entrapment evidence. But, if the evidence supports the finding, and it is found, that the defendant was in the business of selling and furnishing heroin, I would not hold that the police conduct was of such an outrageous nature as to warrant a finding of entrapment as a matter of law.

Chief Justice HUGHES joins in this opinion.

HUGHES, C. J., and SCHREIBER, J., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.