703 P.2d 1238

**The STATE of Arizona, Appellant,**

v.

**Jack Mays STINSON, Jr., Appellee.**

**No. 2 CA–CR 3813.**

Court of Appeals of Arizona, Division 2, Department B.

May 9, 1985.

Alan K. Polley, Cochise County Atty. by Roger Peterson, Deputy County Atty., Bisbee, for appellant.

Wallace R. Hoggatt, Cochise County Public Defender by Robert Arentz, Chief Deputy Public Defender, Bisbee, for appellee.

## OPINION

LACAGNINA, Judge.

In this case Jack Stinson, Jr. was found guilty by a jury of possession and sale of cocaine, one count each. Entrapment was the only defense raised and was submitted to the jury for its consideration. After the verdicts were returned, the trial court granted Stinson's motion for acquittal on the basis that the conduct of the confidential informant was so outrageous that due process and fundamental fairness barred the convictions.

The state argues on appeal that the court erred because the conduct of the informant did not deprive or violate Stinson's right to due process. We agree and reverse.

The only conduct of the informant upon which the trial court based its judgment of acquittal is best described by quoting statements made by Stinson's attorney while arguing the motion for acquittal and statements of the trial court when ruling on the motion.

At the hearing on Stinson's motion to dismiss, defense counsel argued the following:

"Your Honor, I have filed a written motion following the oral motion I made at the close of the trial, and, your Honor, the bases of this case and the motion to dismiss is on the actions of the state's agent, the informant, Waco Jackson. Your Honor, there were allegations made by the defendant and his girlfriend as to certain actions of Waco Jackson. However, Mr. Jackson himself took the stand and admitted the fact that he did distribute a narcotic drug, Talwin, to one person in the Tombstone area, and also, your Honor, that he did essentially take marijuana and amphetamines that were given by the defendant, Mr. Stinson, and gave them back or re-distributed them back to the defendant." (T. at p. 2, 19–25; p. 3, 1–6).

The court at the same time and place prior to granting dismissal, said:

"He admitted under oath that he had given prescription medication to a person not a defendant in this case, but a defendant in another case, a defendant whose conviction was the direct result of this informant's activities. The informant also admitted that he had released back into the stream of commerce, to the defendant himself, the fake amphetamines that turned out to be caffeine, and the marijuana itself." (T. at p. 18, 21–25; p. 19, 1–3).

After reading the many cases cited by the parties, and referred to by the trial court, giving the trial court the right to dismiss an indictment or conviction because of the outrageous conduct of the government and its agents which violates due process and fundamental fairness, it is very clear none can support the actions of the trial court in this case. The charge upon which Stinson was convicted was possession and sale of cocaine occurring on the date alleged. His guilt for these crimes is unquestioned. From the evidence, the court could not find entrapment as a matter of law and submitted the issue to the jury, which found against Stinson on this defense. The court's judgment of acquittal after the verdicts were returned was not based on any conduct of state law enforcement officers or the informant relating to the possession and sale of cocaine by Stinson charged in the indictment. A sampling of the cases urged as authority for approving the trial court's dismissal include the following: *State v. Boccelli*, 105 Ariz. 495, 467 P.2d 740 (1970), where state agents supplied the plan, the marijuana, the buyer and the money; *People v. Strong*, 21 Ill.2d 320, 172 N.E.2d 765 (1961), where government agents supplied the very narcotics giving rise to the offense (government sup-

plied the *sine qua non* of the offense); *U.S. v. Twigg,* 588 F.2d 373 (3rd Cir.1978), where the government provided the locations and all necessary chemicals and equipment for a "speed laboratory."

■ The conduct of the informant and the undercover agents in this case never came close to violating Stinson's due process rights. First, the only connection which the informant had with Stinson and the government agent involved in the transaction for which Stinson was later convicted was when the informant introduced Stinson to the agent. All subsequent negotiations that were part of the cocaine transaction occurred between Stinson and the government agent and did not involve the informant, except that he drove the two parties as directed to the transaction and back. Second, the act of providing three pills to someone other than the defendant is insufficient to suggest a due process violation; the court's inquiry about such a violation is limited to the actions of the government or its agents relating to Stinson and not their actions relating to others. *U.S. v. Jannotti,* 673 F.2d 578 (3rd Cir.1982), cert. denied 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315.

■ Finally, the return to Stinson of his own marijuana and caffeine pills by the informant is not so outrageous that the court should intervene and find a violation of his due process rights. This court in an opinion written by Judge Howard in *State v. Gessler,* 142 Ariz. 379, 690 P.2d 98 (1984), has described with approval the task facing narcotics officers:

> "Thus, while infiltrating the drug milieu, agents must be permitted to behave in a manner which is consistent with the image they are attempting to portray. Generally, the providing of samples is a routine part of any marijuana transaction. In fact, the practice is so common that it would inevitably arouse suspicion if agents were not permitted to do so. To rule otherwise would subject under-

cover narcotics agents to the danger of exposure." 142 Ariz. at 385, 690 P.2d at 104.

See also, *U.S. v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *Hampton v. U.S.,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

The courts have approved infiltration and participation by enforcement personnel as a recognized and permissible means of investigation, including supplying drugs or other items of value in order to gain the confidence of illegal dealers, and in this case, giving back to a dealer his own drugs can hardly be said to violate notions of fundamental fairness and due process.

We reverse and remand to the trial court for sentencing.

HATHAWAY, P.J., and LIVERMORE, J., concur.