665 P.2d 101

**STATE of Arizona, Appellee,**

v.

**John Richard HALL, Appellant.**

**No. 1 CA–CR 5754.**

Court of Appeals of Arizona, Division 1, Department A.

April 5, 1983.

Rehearing Denied May 3, 1983.

Review Denied June 8, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

H.K. Wilhelmsen, Prescott, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

Appellant John Richard Hall was tried in absentia to a jury and convicted of two counts of aggravated assault, class 3 felonies, in violation of A.R.S. § 13–1204(A)(2). Because the indictment charged the use of a deadly weapon and the jury returned verdicts finding the use of a deadly weapon, appellant was sentenced under the enhanced punishment provisions of A.R.S. § 13–604(G). He received concurrent sentences of twelve years imprisonment.

The facts are that on the afternoon of February 11, 1981, the victim was hitchhik-

ing from Flagstaff to Phoenix and was picked up by a man driving a brown Chevrolet van with a motorcycle in the back. After riding for a short distance, the victim realized that the driver was intoxicated and therefore requested that he be permitted to drive the remainder of the trip. The driver, who identified himself to the victim as "John," agreed and the van proceeded toward Phoenix with the victim driving. En route, John's behavior became erratic. On several occasions he threatened to kill the victim and twice fired pistol shots close to the victim's head.

When they arrived in Phoenix, the victim stopped at a service station under the pretense of buying gas and was able to escape. He ran a few blocks from the service station, hailed a police officer in a patrol car and returned to the service station whereupon a John Hall, the same man from whom the victim had fled, was arrested and eventually indicted.

The person arrested and indicted was ultimately released on bond, did not appear for trial, and the trial proceeded in absentia.

At trial the victim described the incidents of February 11, 1981, and said that his assailant introduced himself as John. He described the assailant as being around 40 years of age, with a weather-beaten face, sunken eyes, and longish hair. He identified photographs taken at the service station of the van but no photographs of the appellant were shown to him nor was there any additional testimony by the victim which identified appellant as the assailant.

The arresting officers testified that the man arrested at the service station carried identification in his wallet bearing the name John Richard Hall. Additionally, they testified that the motorcycle was registered to a man named John Richard Hall. However, no fingerprints or photographs of the man arrested and booked were identified at trial. In short, the only evidence produced at trial identifying appellant as the assailant was the fact that a long-haired, weather-beaten, sunken-eyed man of about 40, named John Richard Hall, committed the crimes. The appellant contends that this was insufficient evidence of his identity as the perpetrator to convict.

█ It is axiomatic that the burden is always on the state to prove all of the elements of the crime and the identity of the person who committed the crime beyond a reasonable doubt. *State v. Dutton*, 83 Ariz. 193, 318 P.2d 667 (1957).

█ We recognize that under *State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967) name identity alone is not sufficient to prove guilt beyond a reasonable doubt. Here, however, there is more than an identity of names. Since the man arrested was only out of the victim's sight for a few moments the state proved beyond a reasonable doubt that the John Richard Hall, approximately 40, sunken-eyed, weather-beaten and with long hair, who was arrested in the presence of the victim and who had been with the victim from commission of the crime to time of arrest, was the same man who committed the crime. The real question is not whether the evidence was sufficient to convict the John Richard Hall described but whether the John Richard Hall who was sentenced is the same person as the man initially arrested for the crime. About that there is no doubt.

The John Richard Hall who was originally arrested was released on a bond posted by Dorothy Lee Hall, the wife of John Richard Hall, the man ultimately sentenced. William Kiger, counsel appointed for the John Richard Hall who was arrested, also appeared for the John Richard Hall who was sentenced. The judge who heard the description of the perpetrator at trial also saw the man sentenced and presumably the descriptions matched. When the judge asked if there was any legal cause why sentence should not be pronounced counsel for Mr. Hall responded in the negative. The man sentenced never objected to being sentenced or so much as intimated that he would later claim that he was not the person convicted of the crime. Had he done so it would have been incumbent upon the state to demonstrate at that time that the

man sentenced was the same person who was initially arrested.

If the circumstances and nature of the crime and the all but continuous observation of the perpetrator by the victim had been different the state's proof might well have been insufficient. Here, however, there is no question but that the jury convicted a specific man and that he is the person who was sentenced.

There is one Arizona case on point that merits comment. In *State v. Corrales,* 119 Ariz. 381, 580 P.2d 1235 (1978) Division 2 of this court upheld a conviction obtained on a trial in absentia where there was no in-court identification of the defendant who had consistently given the name "Ignacio Castillo Corrales." Four policemen testified to the physical description of the person arrested. While the details of that description and the circumstances of the arrest do not appear in the report of the case the evidence presented was held sufficient to support the conviction.

 Appellant also claims that the trial court erred in finding that his absence was voluntary and in proceeding to trial in his absence. A defendant has a constitutional right to be present in the courtroom at every critical stage of the proceedings against him. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *State v. Bohn,* 116 Ariz. 500, 503, 570 P.2d 187, 190 (1977). This right is not absolute however, and may be waived if the defendant voluntarily absents himself. *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); *State v. Bohn, supra.*

Rule 9.1, Ariz.R.Crim.P., provides that the trial court may infer that absence is voluntary if the defendant had personal notice of the time of the proceeding, his right to be present at it, and received a warning that the proceeding would go forward in his absence should he fail to appear. *State v. Tudgay,* 128 Ariz. 1, 623 P.2d 360 (1981). When circumstances indicate that these requirements have been satisfied, the absence is presumed voluntary and is construed as a valid waiver of the defendant's right to be present. *State v. Tamplin,* 126 Ariz. 175,

613 P.2d 839 (App.1980); *State v. Bohn, supra.* The trial judge need not even make a specific finding of voluntariness prior to beginning the proceedings in absentia. *State v. Pena,* 25 Ariz.App. 80, 541 P.2d 406 (1975). When the foregoing requisites are met the burden falls on the defendant to show that his absence was involuntary. *State v. Bohn, supra; State v. Tudgay, supra.*

The record shows that the appellant received proper notice under Rule 9.1, Ariz.R. Crim.P. The court personally addressed him at his arraignment on March 16, 1981, and told him that he had a right to be present at any proceedings on the matter and that he also had a right to voluntarily absent himself. The appellant was also warned by the court that if he failed to appear and the court found this absence to be voluntary the proceedings would be conducted in his absence. The court also instructed the appellant to maintain contact with his attorney so that he would be informed in the event changes in court dates occurred.

At arraignment the trial was set for May 6, 1981. Although the trial was subsequently continued three times the initial notice in compliance with Rule 9.1, Ariz.R. Crim.P., was all that was required. There is no requirement that the defendant receive notice from the court under Rule 9.1 after every continuance. *State v. Pena,* 25 Ariz.App. 80, 82, 541 P.2d 406, 407–08 (1975).

That the appellant knew of the July 15, 1981, trial setting is evident from the statement by his counsel that he had spoken with the appellant by telephone on July 13, 1981. The appellant had told his attorney that he was ill and was not sure at that time whether he would be able to be present at his trial. Counsel stated that he instructed the appellant to seek medical attention and to have the doctor contact him as soon as possible so that he might inform the court. Appellant did not contact his counsel again, no medical reports were received, and he did not appear at trial on July 15, 1981.

Upon these facts and in light of the notice given, the trial judge properly inferred that the appellant had voluntarily absented himself from his trial and proceeded to try the appellant in absentia.

The appellant concedes that the burden was then his to show that the absence was not voluntary and that he did not waive his right to be present. Appellant raised this issue in a motion for new trial, claiming that the court's finding of voluntariness regarding the appellant's absence was in error and that the motion to continue should have been granted. A hearing on this issue was held in November of 1981.

Appellant contends that sufficient evidence was presented at this hearing to meet his burden of establishing that his absence was not voluntary and that the judge erred in proceeding in absentia. He claimed that on July 13, 1981, two days before his trial date and after he had spoken with his attorney and told him that he was ill, he "blacked out" for a period of ten days. He says he remembers being at a lake drinking beer on July 13, 1981, and then waking up in Nevada on July 23, 1981. Appellant testified that he is an alcoholic subject to seizures and that he had suffered a head injury in 1980 and these conditions caused the alleged "black out."

The record is unclear as to exactly where the appellant was from July 13, 1981, until August 7, 1981, when he was extradited to Arizona. He was arrested on July 19, 1981, in Nevada and the police there noted no medical problems. He was in custody for three weeks, some of which time was allegedly spent in a hospital. No medical reports were presented. The appellant did present a bill from the Nevada hospital where the appellant said that he had been treated but he was unable or would not say what the treatment was for.

At the hearing the appellant called Dr. Steven Ironhill, a psychologist, who testified that the appellant has brain damage, probably a result of his alcoholism coupled with previous head injuries. The doctor further testified that in his opinion it is more likely that the appellant knowingly absented himself from trial than that he simply "blacked out" as claimed.

In light of this evidence, the trial judge did not abuse his discretion in again finding that the appellant's absence from his trial was voluntary. From the meager evidence presented we cannot say that the appellant met his burden of proving otherwise as required under Arizona law. *See State v. Bohn, supra; State v. Tudgay, supra.*

The appellant's final contention is that the trial court committed fundamental error in convicting the appellant of aggravated assault on the person referred to in the indictment as Scott Boulder rather than upon the person designated by the victim's true name. The victim had used a false name to protect himself and his mother although the arresting and investigating officers knew his true identity. The real name of the victim was revealed to the court during voir dire examination on July 15, 1981. The state never moved to have the indictment amended to reflect the true name of the victim. The appellant did not object to this discrepancy at trial, although the disparity between the victim's true identity and the name of the victim used in the indictment was placed before the court on numerous occasions. The issue was presented during voir dire, the victim testified regarding his identity, and the problem was addressed by the prosecutor in closing argument. It is well established that absent fundamental error, lack of timely objection at trial operates as a waiver for purpose of appeal. *State v. Mata,* 125 Ariz. 233, 609 P.2d 48 (1980). Thus the appellant has waived his objection on this issue.

Although the appellant claims that this procedure subjects him to double jeopardy and also says that the failure to disclose the true name and identity of the victim denied him his right to investigate the victim's background, we find no fundamental error.

The concealment of the victim's identity is irregular to say the least. Had the defendant or his counsel ever sought the victim's true name or whereabouts they would have been entitled to such information.

The appellant was obviously, however, not prejudiced in this instance. The real name of the victim was revealed on the record during trial so that appellant cannot be tried twice for the same incident. Neither appellant nor his counsel apparently ever sought to interview the victim or check on his background. The state's investigator testified that the victim had no criminal record. Appellant's mere suggestion of what he could theoretically have done had he known the victim's true name is not so convincing as to require reversal.

The conviction and sentence rendered below are affirmed.

CORCORAN, P.J., and CONTRERAS, J., concur.