935 P.2d 870

**STATE of Arizona, Appellee, Cross–Appellant,**

v.

**Rene ROCHA–ROCHA, Appellant, Cross–Appellee.**

**No. 1 CA–CR 94–0764.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 26, 1996.

Review Denied April 29, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Robert S. Golden, Assistant Attorney General, Phoenix, for Appellee/Cross–Appellant.

Robert W. Doyle, Phoenix, for Appellant/Cross–Appellee.

## OPINION

VOSS, Judge.

Rene Rocha–Rocha (defendant) appeals from his conviction and sentence on one count of conspiracy to possess narcotic drugs for sale (cocaine), a class 2 felony under Arizona Revised Statutes Annotated section (A.R.S. § ) 13–3408. The state cross-appeals the trial court's directed verdict of acquittal on one count of possession with intent to sell cocaine. We affirm the conspiracy conviction and sentence, and reverse the trial court's directed verdict on the possession charge and remand with instructions to reinstate the jury's verdict and to conduct proceedings not inconsistent with this decision.

### FACTUAL [1] AND PROCEDURAL BACKGROUND

In April 1993, Richard E. Fass was an undercover narcotics officer working with the Drug Enforcement Agency. Fass had six years of drug enforcement experience, primarily working undercover on the street.

Fass was assigned to the Phoenix office working undercover on April 23, 1993, when an informant named Berto contacted him. Berto advised Fass that he knew some people who were interested in purchasing large amounts of cocaine.

Fass and Berto met that same afternoon and drove to the Travelers' Inn. In the parking lot of the motel, Fass and Berto met Francisco Oros–Oropeza, one of the potential purchasers. Oros–Oropeza escorted Fass and Berto to a room at the motel. Oros–Oropeza testified that the purpose of the meeting was to negotiate purchasing cocaine from Fass.

Five people, including defendant, were in the motel room. Fass had never encountered any of the individuals in the room. After introductions, the conversation turned to drugs. Fass testified that a woman named Charobono told him that they had been in town a few days looking to purchase cocaine. Further, she conveyed that they were just interested in purchasing five kilos

---

1. We view the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against the defendant. *State v. At-* *wood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

of cocaine initially, but the amount would eventually increase to twenty kilos of cocaine. Fass testified that the others in the room, including defendant, were listening to the conversation and appeared to share Charobono's desires to purchase.

The group discussed price and agreed upon $20,000 per kilo. When timing for delivery was discussed, defendant told Fass the money could be obtained that day—that his cousin had the money. Defendant also stated that he and Oros–Oropeza would procure the money and rent another room to complete the exchange at a different location. Defendant then advised Fass that when defendant had the money and the new room, he would contact Fass. Defendant and Oros–Oropeza then left the motel room. Fass and Berto left shortly thereafter.

Later that day, Fass received a page to call the room at Travelers' Inn, the site of the first meeting. Fass called and spoke to Kathy Rosas. Rosas told Fass the money was ready and directed him to a room at the La Quinta motel. Fass and Berto went to the motel room as directed, where they met defendant and Oros–Oropeza. Defendant told Fass there was enough money to purchase one kilo of cocaine and spread $20,000 in cash out on the bed. Oros–Oropeza testified that defendant brought the money to the room. Once the money was counted, defendant and the others went to a car in the parking lot where defendant took possession of one kilo of cocaine. Defendant was arrested shortly after taking possession of the cocaine and was later indicted on one count of possession of cocaine for sale and one count of conspiracy to possess cocaine for sale, class 2 felonies under A.R.S. §§ 13–1003 and 13–3408, respectively.

Defendant did not appear for his trial and was tried *in absentia*. In both his opening statement and closing argument, defense counsel admitted defendant's guilt of "at least possession." The jury agreed, returning guilty verdicts on both counts.

Defendant was arrested nine months later. At sentencing, the trial judge concluded that he had erred in denying defendant's Rule 20

motion for directed verdict on the possession for sale charge, and therefore entered a judgment of not guilty on Count II, despite the jury conviction. The judge reasoned that the facts amounted to entrapment as a matter of law because "you can't convict an individual of possession of drugs when the drugs that he is charged with possessing was (sic) drugs that are furnished by law enforcement." On Count I, the trial court sentenced defendant to an aggravated [2] eight-year prison term.

Defendant timely appealed his conviction and sentence on Count I. The state timely cross-appealed the judgment of acquittal on Count II.

## ISSUES PRESENTED

On appeal:

> WHETHER THE STATE INTRODUCED EVIDENCE SUFFICIENT TO IDENTIFY DEFENDANT AS THE PERSON WHO WAS ON TRIAL.

On cross-appeal:

> WHETHER ENTRAPMENT ARISES AS A MATTER OF LAW WHERE THE STATE SUPPLIES DRUGS TO A DEFENDANT AND THEN CHARGES HIM WITH POSSESSION OF THOSE DRUGS.

## DISCUSSION

1. *The evidence was sufficient to support the finding that the person who committed the crime and the person convicted of the crime were one and the same.*

 The state has the burden to prove the identity of the person who committed the crime. *State v. Hall,* 136 Ariz. 219, 221, 665 P.2d 101, 103 (App.1983). Defendant argues that the state failed to carry its burden because "there was no evidence linking [defendant] to the man identified as Rene Rocha–Rocha" or evidence sufficient to enable the witnesses to identify defendant "as the Rene Rocha–Rocha who was on trial." In support

---

2. The presumptive term was seven years; the maximum aggravated term was fourteen years.

A.R.S. §§ 13–701(C) (subsequently amended), – 702(B) (subsequently amended).

of his argument, defendant notes that the state did not introduce either a booking photograph or fingerprint evidence, and that the witness testimony did not include a physical description of the man who was arrested and charged under the name Rene Rocha–Rocha. The evidence, however, did include statements from Alonso Rocha–Rocha, a co-defendant, who testified that he was defendant's cousin, and that Rene was the person police arrested on April 23, 1993. Police officers also testified that the person who purchased the cocaine was Rene Rocha–Rocha, and that he was taken into custody immediately after he purchased the cocaine. The evidence further indicated that defendant was taken into custody the day he purchased the cocaine.

The analysis in *Hall* is instructive here:

> The real question is not whether the evidence was sufficient to convict the John Richard Hall described but whether the John Richard Hall who was sentenced is the same person as the man initially arrested for the crime.

136 Ariz. at 221, 665 P.2d at 103.

The "real question" here is whether the Rene Rocha–Rocha *who was sentenced* is the same person as was initially arrested. As in *Hall*, "there is no doubt" about the answer. *Id.* Defendant, like the defendant in *Hall*, was arrested, indicted, arraigned, released on bond, failed to appear for trial, and was tried *in absentia. Id.* As in *Hall*, the state did not introduce a booking photograph or fingerprint evidence. *Id.* Finally—again as in *Hall*—defendant stood mute at sentencing when the trial court asked whether there was any legal cause why sentencing should not proceed. *Id.* This case is even stronger than *Hall* because here defendant not only failed to object at sentencing, but told the court, "I am sorry about what I did, and I want to apologize."

There is more than an identity of names in this case. Police testified that the man taken into custody was the man who purchased the cocaine. He went by the name "Rene Ro-

cha–Rocha," and he was booked and indicted under that name.

■ It is not enough to argue, as defendant did at trial, that identification was lacking because the state did not put on proof that the man on trial—conceded by all to be Rene Rocha–Rocha—physically "matched" the man they arrested. Defendant made positive identification impossible by absenting himself from trial, and we decline to create a rigid legal standard for identification that would encourage defendants to violate their release conditions by failing to appear. At a minimum, defendant must assert that he is *not* the man who was arrested at the scene of the crime. We have no reason to believe that the person convicted was anyone other than defendant, and in the absence of a claim to that effect we need not address this issue further.[3]

### 2. *The trial court improperly dismissed Count II.*

■ During trial, the court expressed its concern that entrapment might exist as a matter of law because the state had furnished the cocaine to defendant. Defendant did not notice entrapment as a defense, but argued for a directed verdict on the ground articulated by the trial court. At trial, the court denied defendant's motion. However, at sentencing, citing *State v. Boccelli,* the trial court directed a verdict of acquittal for defendant as to Count II, maintaining that the supreme court has held that entrapment is proven as a matter of law in a possession for sale case when the police have supplied the drugs to the defendant. 105 Ariz. 495, 497, 467 P.2d 740, 742 (1970); *see also State v. McKinney,* 108 Ariz. 436, 439–40, 501 P.2d 378, 381–82 (1972). We disagree and reverse.

■ Entrapment as a matter of law exists where uncontradicted testimony demonstrates that through the creative activity of the police, the state induces an otherwise innocent person to commit a criminal act.

---

3. This decision comports with other reported cases affirming convictions where the defendant was arrested by the police officer who observed him commit the crime, later released, and tried *in absentia. Id.* at 221–22, 665 P.2d at 103–04;

*State v. Corrales,* 119 Ariz. 381, 381–82, 580 P.2d 1235, 1235–36 (App.1978); *People v. Williams,* 274 Ill.App.3d 793, 211 Ill.Dec. 441, 446–47, 655 N.E.2d 470, 475–76 (1995); *Murphy v. State,* 555 N.E.2d 127, 128–29 (Ind.1990).

*Boccelli,* 105 Ariz. at 496–97, 467 P.2d at 741–42 (quoting *Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212–13, 77 L.Ed. 413 (1932)); *State v. Gessler,* 142 Ariz. 379, 382, 690 P.2d 98, 101 (App.1984). An entrapment defense does not lie when the police "merely afforded an opportunity for a predisposed person to commit a crime." *Gessler,* 142 Ariz. at 382, 690 P.2d at 101.

The facts in *Gessler,* like here, involved a "reverse buy." An informant advised law enforcement that defendants were looking for drugs. Law enforcement was introduced to defendants and negotiations for the drugs ensued. Money was exchanged, the drugs were delivered, and defendants were arrested immediately following the transaction. In addressing the entrapment issue, Division Two of this court underscored the factual distinctions between their case and those in *Boccelli:*

> In the instant case it cannot be said that the undercover agents supplied all the ingredients of the offense. The distinction between the situations in *Boccelli* and in *Strong* and the situation herein is most readily apparent with respect to the nature of the transaction. Here, the undercover agents merely pretended that they were selling marijuana to the appellees. In *Boccelli* and in *Strong* the charges emanated from a "sale" of narcotics wherein the drugs were supplied by undercover agents and sold to undercover agents. Thus the agents were supplying the sine qua non of the offense, the indispensable condition upon which the offense was predicated. The court in *Boccelli* reversed the conviction since uncontradicted testimony at trial indicated that *all of the ingredients of the offense, the plan, marijuana, buyer, purchase money and intent to make the sale, were provided by the state.*

*Gessler,* 142 Ariz. at 383–84, 690 P.2d at 102–03 (emphasis added).

Like in *Gessler,* the facts here are clearly distinguishable from those in *Boccelli* and *McKinney.* In *Boccelli,* after defendant refused to buy drugs from a government informant, defendant agreed to keep the drugs at his house. *Boccelli,* 105 Ariz. at 496, 467 P.2d at 741. Later, the informant brought an undercover police officer to purchase the drugs from defendant. *Id.* Similarly, in *McKinney,* the government provided defendant with drugs through an informant, and the informant initiated contact with undercover officers to arrange defendant's sale of the drugs. 108 Ariz. at 438, 501 P.2d at 380. Rather than presenting mere opportunity, both of these cases present situations where a state agent supplied drugs to the defendant and aided defendant in attempting to sell the drugs to a second state agent. *Id.; Boccelli,* 105 Ariz. at 496, 467 P.2d at 741. Such facts led the *Boccelli* court to conclude: "the State's agents supplied all the ingredients of the offense: the plan, the marijuana, the buyer, the money for the purchase ... even the intent to sell." 105 Ariz. 495, 497, 467 P.2d 740, 742.

Here, conversely, law enforcement did not direct defendant to purchase or sell the cocaine, and did not arrange, or attempt to arrange, a second sale to another state agent. Defendant was looking for cocaine and his activities clearly show a predisposition to possess cocaine. The fact that he purchased the drugs from an undercover officer does not, in itself, give rise to an entrapment defense. Further, the amounts discussed and the amount purchased allowed the jury to conclude that the cocaine was for re-sale.

Moreover, the difference in the statutory scheme at the time *Boccelli* and *McKinney* were decided further distinguishes these cases from the present case. At the time both *Boccelli* and *McKinney* were decided, the statute in effect prescribed a *per se* rule for entrapment when the government provided the drugs. Former A.R.S. § 36–1002.07 prohibited the possession of drugs with no exceptions. The *Boccelli* court found that: " ... the evidence is uncontradicted that the State's agents placed in commerce the narcotic, the trafficking in which is *absolutely forbidden by the legislative act."* *Boccelli,* 105 Ariz. at 497, 467 P.2d at 742 (referring to A.R.S. § 36–1002.07 (1956) (repealed 1981)) (emphasis added). Now, A.R.S. § 13–3412(A)(4) permits state officers, employees, and their agents to possess such drugs while acting in the course of their official duties, thereby nullifying the statutory *per se* rule

articulated in *Boccelli* and followed in *McKinney*. Accordingly, we reverse the trial court's directed verdict of acquittal as to Count II.

## CONCLUSION

*Boccelli* was decided at a time when even law enforcement was "absolutely forbidden" from placing narcotics in commerce. The law has changed. Additionally, the facts of *Boccelli* are infinitely different from those here and this court in *Gessler* recognized that difference.

We therefore affirm defendant's conviction on Count I (conspiracy to possess cocaine for sale) and reverse the trial court's directed verdict of acquittal on Count II (possession of cocaine for sale) and remand with instructions to reinstate the jury's verdict and for proceedings not inconsistent with this decision. We have not reviewed the record for fundamental error. *See State v. Smith,* 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).

WEISBERG, P.J., and GRANT, J., concur.