29 P.3d 877

**STATE of Arizona, Appellee,**

v.

**Robert A. HERNANDEZ, Appellant.**

No. 1 CA–CR–00–0763.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 14, 2001.

Janet Napolitano, Arizona Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Robert A. Walsh, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Paul J. Prato, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

TIMMER, Presiding Judge

¶ 1 Robert A. Hernandez appeals his conviction and sentence for sale of narcotic drugs, a class two felony, and argues that the trial court erred by refusing to instruct the jury on the defense of entrapment. We must determine whether the evidence produced at trial sufficiently supported the proposed instruction. We conclude that because Hernandez failed to demonstrate that a law enforcement agent originated the idea of the drug sale, the trial court did not err by refusing to instruct the jury on entrapment. We therefore affirm.

## BACKGROUND

¶ 2 In 1998, Viking Freight, a shipping company, hired Martech, Inc., a licensed private investigations firm, to investigate ongoing thefts occurring at Viking Freight's Phoenix facility. To further this objective, licensed investigator Jerry Hose, a Martech employee, commenced work as a loader at Viking Freight on February 2, 1998. Hose befriended other Viking Freight employees, including Hernandez, and attempted to gain their trust in order to learn about their activities. Hose portrayed himself as someone who "parties" and uses drugs. On one occasion while working at Viking Freight, Hose

cut what he said was cocaine in the presence of Hernandez and other co-workers and feigned snorting some of it. At trial, Hose and Hernandez offered different versions of the events leading to the eventual drug sale.

¶ 3 According to Hose, Hernandez revealed that he "liked to party and liked to do cocaine" and then offered to sell the drug to Hose, who declined. After Hose reported the incident to his boss at Martech, Stephen Marlow, Hose was directed to attempt to purchase cocaine from Hernandez. Accordingly, Hose "set up a buy" with Hernandez that fell through because Hernandez did not work on the scheduled sale date. Hose ceased actively working at Viking Freight on February 13 and instead called in sick at the request of his client. However, Hose continued his effort to purchase cocaine from Hernandez.

¶ 4 On February 20, Hose and Marlow met with Phoenix police detective Michael Shipley in order to obtain authority for Hose to buy cocaine from Hernandez and then possess it. Shipley testified that his goal at the meeting was to ensure that Hose would be a "credible" buyer. Hose testified that they discussed the amount of cocaine to purchase, the purchase price, and the timing of the sale. Shipley also instructed Hose and Marlow to contact Shipley immediately before and after the sale.

¶ 5 On February 27, Hose called Hernandez and arranged to purchase cocaine from him that night during Hernandez's break at Viking Freight. Hose then called Shipley and informed him of the arranged sale. After Marlow gave money to Hose for the transaction, Hose went to Viking Freight and purchased cocaine from Hernandez. Hose then delivered the cocaine to Shipley at Martech's office. At Marlow's request, the police waited until May 7 to arrest Hernandez in order to allow Martech to complete its theft investigation. The police did not compensate Martech, Marlow, or Hose for their actions.

¶ 6 According to Hernandez, he befriended Hose after the latter started working at Viking Freight. On one occasion, Hernandez

told Hose that he had used cocaine while attending a party. Hose then asked if Hernandez would be willing to buy some cocaine for Hose, but Hernandez refused the request. Hose then "pressured" him to sell cocaine to Hose. For example, Hose tried to ingratiate himself with Hernandez by bringing him a sandwich and by using cocaine with him and other co-workers while at work.

¶ 7 Hose also called Hernandez at home and at work, asking to buy cocaine. Hernandez knew about the theft investigation and speculated that Viking Freight was monitoring telephone calls taken at work. Consequently, he became fearful that Viking Freight would learn about Hose's request for drugs and that Hernandez would "get in trouble" as a result. Hernandez eventually decided to sell some of his own cocaine to Hose to "get him off [his] back." Hernandez maintains that he never sold cocaine to anyone prior to selling it to Hose.

¶ 8 At the conclusion of the presentation of evidence, Hernandez asked the court to instruct the jury on the defense of entrapment. The court refused the request without further comment, and the jury ultimately convicted Hernandez. We review the trial court's refusal to give the entrapment instruction for a clear abuse of discretion. *State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

## DISCUSSION

¶ 9 In 1997, our legislature codified the common law entrapment defense by enacting Arizona Revised Statutes ("A.R.S.") § 13–206 (2001).[1] *State v. Preston,* 197 Ariz. 461, 463–64, ¶¶ 2, 5, 4 P.3d 1004, 1006–07 (App.2000). Under that provision, a person asserting an entrapment defense must admit the substantial elements of the charged offense, A.R.S. § 13–206(A), and prove each of the following elements by clear and convincing evidence:

1. The idea of committing the offense started with law enforcement officers or their agents rather than with the person.

---

1. We cite the current version of A.R.S. § 13–206, as this section has not been amended since passed in 1997 and therefore accurately states

the law in effect when Hernandez committed his crime. *See* A.R.S. § 1–246 (1995); A.R.S. § 13–206 (2001) (Historical and Statutory Notes).

2. The law enforcement officers or their agents urged and induced the person to commit the offense.

3. The person was not predisposed to commit the type of offense charged before the law enforcement officers or their agents urged and induced the person to commit the offense.

A.R.S. § 13–206(B).

¶ 10 Hernandez argues that the trial court erred by refusing to instruct the jury on entrapment because his testimony supported each of the elements required by § 13–206. *See State v. Martin,* 106 Ariz. 227, 229–30, 474 P.2d 818, 820–21 (1970) (If a defendant's testimony sufficiently supports an instruction on entrapment, the court must give it, even if the defendant's testimony is contradicted by other evidence.). The parties agree that Hernandez admitted the substantial elements of the charged offense. A.R.S. § 13–206(A). They dispute, however, whether Hernandez sufficiently proved the factors set forth in § 13–206(B).

¶ 11 Hernandez first contends that his testimony sufficiently established that Hose originated the idea of the cocaine sale. *See* A.R.S. § 13–206(B)(1). The State does not contest this fact but instead argues that neither Hose nor Martech was a law enforcement agent, and Hernandez therefore failed to satisfy § 13–206(B)(1). Hernandez responds that such an agency relationship was established by (1) Martech's affiliation with the police prior to the events underlying the charge against Hernandez and (2) Shipley's involvement with the sale. We address each contention in turn.

■ ¶ 12 Shipley testified that he worked with Marlow on one case prior to the one at issue, and he was aware that another detective had worked with Marlow on two occasions five years previously. Hernandez asserts that this testimony sufficiently demonstrated that Martech was an agent of the Phoenix Police Department. We disagree. Martech was acting as a police agent only if the police authorized its actions by words or conduct. Restatement (Second) of Agency § 26 (1958). The mere fact that Marlow had "worked with" the police prior to the events at issue is insufficient to establish

that Martech was acting under the direction or supervision of the police at the time Hose proposed that Hernandez sell him cocaine. *See United States v. Barnett,* 197 F.3d 138, 143–44 (5th Cir.1999) (private citizen who had provided information to DEA in past not agent absent evidence that DEA made it citizen's "job" to provide such information); *United States v. Busby,* 780 F.2d 804, 806–07 (9th Cir.1986) (private citizen's previous activities as paid informant with other law enforcement agencies and expectation of compensation for providing information insufficient to establish agency); *United States v. Rhodes,* 713 F.2d 463, 467 (9th Cir.1983) (bounty hunter's exchange of information with police did not make him government agent).

■ ¶ 13 We next consider Hernandez's contention that Shipley's ultimate involvement in the sale demonstrated that Hose acted as a law enforcement agent. The State argues that Hose did not become an agent of law enforcement by involving Phoenix Police in the sale. We need not resolve this dispute, however, because the evidence indisputably failed to establish that Hose served as a law enforcement agent at the time he allegedly originated the idea of the sale.

■ ¶ 14 The plain language of § 13–206(B)(1) required Hernandez to show that the idea of the illegal sale originated with Hose at the time Hose served as an agent of law enforcement. This interpretation advances the public policy notion that the legislature " 'could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the Government.' " *Preston,* 197 Ariz. at 464, ¶ 5, 4 P.3d at 1007 (quoting *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)); *see also State v. Rocha–Rocha,* 188 Ariz. 292, 295, 935 P.2d 870, 873 (App.1996) (entrapment exists when "creative activity of the police" induces otherwise innocent person to commit crime).

¶ 15 According to Hernandez, Hose proposed the drug sale and pressured Hernandez to participate in it prior to February 13, 1998, Hose's last day of work at Viking

Freight. Thus, even assuming that Shipley directed or supervised Hose after their first meeting on February 20, the evidence did not establish that the police were involved when Hose originated the idea of the illegal sale. Phrased another way, Hernandez failed to show that the idea of committing the offense originated with law enforcement officers or their agents. A.R.S. § 13–206(B)(1); *cf. Barnett,* 197 F.3d at 143–44 (defendant failed to produce evidence that private citizen acted under government direction during initial stages of scheme); *Busby,* 780 F.2d at 806 (defendant can establish entrapment only if private citizen was government agent at time of inducement); *Rhodes,* 713 F.2d at 467 (no evidence that bounty hunter acted as government agent at time he arranged meeting between defendant and undercover postal inspectors); *United States v. Wilson,* 501 F.2d 1080, 1080–81 (8th Cir.1974) (private citizen who induced coemployee to sell drugs and then involved police in sales not government agent). For this reason alone, the trial court did not err by refusing to instruct the jury on entrapment. In light of our holding, we do not decide whether Hernandez sufficiently proved that Hose, while acting as an agent of law enforcement, urged or induced Hernandez to sell cocaine, A.R.S. § 13–206(B)(2), or that Hernandez was not predisposed to commit the offense. A.R.S. § 13–206(B)(3).

## CONCLUSION

¶ 16 We hold that Hernandez failed to show that the idea of committing the offense charged against him originated with law enforcement officers or their agents. Accordingly, the trial court did not err by refusing to instruct the jury on the defense of entrapment, and we therefore affirm.

CONCURRING: SUSAN A. EHRLICH, Judge and JOHN C. GEMMILL, Judge.