**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FLOYD DAVID SLUSHER,

Petitioner-Appellant,

v.

ROBERT FURLONG; ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

Respondents-Appellees.

No. 01-1192
(D.C. No. 97-N-1062)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **MURPHY** , **McKAY** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Petitioner Floyd David Slusher, proceeding pro se, seeks a certificate of

appealability (COA) to appeal the district court's denial of his petition for writ of

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

habeas corpus under 28 U.S.C. § 2254. We deny his request for a COA and dismiss the appeal.

I.

The following statement of facts is derived from the undisputed facts in the record on appeal and the testimony and evidence presented at the post-conviction evidentiary hearing in state court.

In April and May, 1990, Mr. Slusher was incarcerated in the county jail in Jefferson County, Colorado. Mr. Slusher claims he was approached by another prisoner, Carl Beecroft, about an escape plan. Although Mr. Slusher claims he initially told Mr. Beecroft that he was not interested in escaping, he eventually agreed to the plan.

After Mr. Slusher agreed to the escape plan, Mr. Beecroft contacted Detective Nicholas Hartney of the City of Westminster police department and told him that he had information regarding a possible escape from the Jefferson County jail. Detective Hartney informed Mr. Beecroft that he was not interested in the information and he told Mr. Beecroft to contact Detective Jerry Mundt in the Jefferson County Sheriff's Department. Mr. Beecroft subsequently contacted Detective Mundt and informed him of the escape plan. In response to this information, Detective Mundt went undercover, posing as Mr. Beecroft's purported contact on the outside, and he proceeded to contact Mr. Slusher under

the pretense of assisting his escape plan. Mr. Slusher then put Detective Mundt in contact with Jimmie Lucero, a friend and business associate of his who was going to assist in accomplishing the escape. Detective Mundt then proceeded to record a number of telephone conversations with Mr. Slusher regarding the escape, and he also received partial payment for the escape from Mr. Lucero. Based on Detective Mundt's undercover investigation, the Jefferson County district attorney filed felony escape charges against Mr. Slusher and Mr. Lucero in May, 1990.

Mr. Slusher was charged with attempted escape, solicitation to aid escape, and conspiracy to aid escape, and Roberta Nieslanik, a state public defender, was appointed to represent him. During his initial meeting with Ms. Nieslanik in May, Mr. Slusher requested that she investigate and determine whether he could assert a viable entrapment defense based on the conduct of Mr. Beecroft. He also provided her with the names of several prisoners whom he claimed had witnessed his conversations with Mr. Beecroft, and he requested that she interview these witnesses. Either during this initial meeting or shortly thereafter, Mr. Slusher also informed Ms. Nieslanik that he would consider pleading guilty to the charges against him if, in exchange, the district attorney would agree to a favorable disposition of the charges against Mr. Lucero. However, Mr. Slusher claims he told Ms. Nieslanik that he would only enter into such a plea agreement if it was determined that he did not have a viable entrapment defense.

With the exception of one or two court appearances in June or July, 1990, Mr. Slusher had no further contact with Ms. Nieslanik. Although Mr. Slusher mailed at least two letters to her requesting information regarding the status of his case, she failed to respond. It is also undisputed that Ms. Nieslanik made no attempt to interview the prisoner witnesses that Mr. Slusher had identified and that she failed to perform any factual investigation or legal research into the entrapment defense.

Mr. Slusher's arraignment took place on October 1, 1990. Unbeknownst to Mr. Slusher, Ms. Nieslanik had been transferred to another public defender's office prior to the arraignment and another public defender, William Sublette, had been assigned to represent him. Mr. Sublette did not review Mr. Slusher's file until September 30, and he met with Mr. Slusher for the first time at the arraignment hearing. At that time, Mr. Sublette informed Mr. Slusher that he had been advised by Ms. Nieslanik that Mr. Slusher was going to accept a plea agreement which had been offered by the district attorney in exchange for Mr. Lucero receiving lenient treatment. Mr. Slusher became upset when he heard this and he informed Mr. Sublette that he had received ineffective assistance of counsel from Ms. Nieslanik because she failed to investigate the entrapment defense. Mr. Sublette then requested that the court grant a lengthy continuance of

the arraignment hearing so that he could investigate the case further, but the court refused and only granted a continuance until October 4.

On Oct. 2 or 3, Mr. Sublette met with Mr. Slusher and advised him that he could not adequately investigate the entrapment defense prior to the arraignment hearing on October 4. He also advised Mr. Slusher that the district attorney's plea offer had to be accepted on Oct. 4 or it would be withdrawn. As a result, Mr. Sublette advised Mr. Slusher that his only options at that time were to either: (1) accept the plea agreement and plead guilty to the charges of solicitation to aid escape and conspiracy to aid escape in exchange for which Mr. Lucero would receive lenient treatment; or (2) reject the plea agreement, set the case for trial, and Mr. Sublette would then investigate the entrapment defense prior to trial. Mr. Slusher opted for the first option and his guilty plea was entered on October 4.

In June, 1991, Mr. Slusher filed a post-conviction motion in Jefferson County District Court. In his motion, Mr. Slusher requested that the court vacate his guilty plea because it was not made knowingly or voluntarily due to Ms. Nieslanik's failure to investigate the entrapment defense. After holding an evidentiary hearing, the court found that Ms. Nieslanik's failure to investigate the entrapment defense was not ineffective assistance of counsel because Mr. Slusher made a knowing and intelligent choice at his arraignment to waive the defense

and accept the plea agreement. On appeal, the Colorado Court of Appeals affirmed, and the Colorado Supreme Court subsequently denied Mr. Slusher's petition for a writ of certiorari.

## II.

Mr. Slusher claims he is entitled to habeas relief under 28 U.S.C. § 2254 because he received ineffective assistance of trial counsel due to Ms. Nieslanik's failure to investigate the entrapment defense. The magistrate judge recommended to the district court that the petition be dismissed, finding that Mr. Slusher's entrapment defense lacked merit and that he was therefore not prejudiced by Ms. Nieslanik's failure to investigate the defense. The district court accepted the magistrate judge's recommendation and dismissed the petition.

As a threshold matter, Mr. Slusher must demonstrate that he is entitled to a certificate of appealability (COA) under 28 U.S.C. § 2253. In order to receive a COA on his ineffective assistance claim, Mr. Slusher must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"To demonstrate ineffectiveness of counsel, the defendant must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial." *United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 690 (1984)). Failure to establish either prong of

the *Strickland* standard will result in the denial of habeas relief, *Strickland*, 466 U.S. at 697, and "[a]n ineffective assistance claim may be resolved on either performance or prejudice grounds alone," *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) (quotation omitted), *cert. denied*, 121 S. Ct. 1406 (2001). Here, while we believe there are significant issues regarding Ms. Nieslanik's performance, we do not need to resolve them because we hold that Mr. Slusher has failed to establish that he was prejudiced by any deficiencies in her performance.

Under the prejudice prong of the *Strickland* test, "a defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Harfst*, 168 F.3d 398, 402 (10th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, this requires the defendant to "show that he would not have pled guilty had his attorney performed in a constitutionally adequate manner." *Miller v. Champion*, 262 F.3d 1066, 1068 (10th Cir. 2001). In making this determination, "[i]t is not necessary for the defendant to show that he actually would have prevailed at trial, although the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel." *Id.* at 1069.

Mr. Slusher claims that Ms. Nieslanik's performance was deficient because she: (1) failed to uncover evidence showing that Mr. Beecroft had previously worked as a paid confidential informant for the City of Arvada and the City of Westminister police departments; [1] and (2) failed to uncover evidence showing that Detective Mundt paid Mr. Beecroft $350 for the information about the escape plan. [2] Mr. Slusher claims he was prejudiced by Ms. Nieslanik's failure to develop this evidence because it supported his entrapment defense and he would not have pled guilty if he had been aware of the evidence at the time he entered his plea.

Mr. Slusher's entrapment defense is governed by Colorado law. Colorado's entrapment statue provides that "[t]he commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official *or other person acting under his direction*." C.R.S. § 18-1-709. (emphasis added). Mr. Beecroft was not a law enforcement official, and there is no evidence in the record indicating that he was acting under the "direction" of a law enforcement

---

[1] We take judicial notice that Westminster and Arvada are municipalities located, at least in part, in Jefferson County, Colorado, and that both cities have their own police departments that are separate from the Jefferson County Sheriff's Department.

[2] Mr. Slusher also claims that Ms. Nieslanik's performance was deficient because she failed to interview the prisoner witnesses. We need not address this aspect of Mr. Slusher's claim, however, since it has no bearing on the dispositive issue of whether Mr. Beecroft was acting as an agent of law enforcement officials at the time he allegedly entrapped Mr. Slusher.

official at the time he initially approached Mr. Slusher about the escape plan. To the contrary, Detective Hartney of the City of Westminster police department testified at the post-conviction hearing that Mr. Beecroft was not working for any law enforcement officials during the time he was in the Jefferson County jail, and there is no evidence in the record indicating that either Detective Hartney or Detective Mundt, or their respective departments, had any prior knowledge of Mr. Beecroft's alleged plan to entrap Mr. Slusher. [3] There is also no evidence that Mr. Beecroft was acting pursuant to an ongoing or standing arrangement with any of these law enforcement officials. Rather, the record clearly indicates that Mr. Beecroft was acting on his own when he initially contacted Mr. Slusher.

The Colorado Supreme Court has not had an occasion to apply Colorado's entrapment statute in a case such as this one. Consequently, we must "predict how [the Colorado Supreme Court] would rule." *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). In doing so, "we are free to consider all resources available, including decisions of [Colorado] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Id.*

---

[3] At the post-conviction hearing, it was also established that the City of Arvada police department ceased using Mr. Beecroft as an informant in 1985. Although Mr. Slusher claims it is significant that the Arvada police department ceased using Mr. Beecroft as an informant because of a concern that his conduct bordered on entrapment, this fact has no relevance to the dispositive issue of whether Mr. Beecroft was acting under the direction of law enforcement officials when he allegedly entrapped Mr. Slusher in 1990.

-9-

When a defendant claims he was entrapped by a private citizen acting as a police informant, the general approach among both state and federal courts is to require the defendant to present credible evidence showing that the private citizen was either: (1) acting pursuant to specific directions from law enforcement officials regarding the defendant; or (2) acting pursuant to an ongoing or standing arrangement with law enforcement officials under which the private citizen has formally agreed to provide information regarding criminal activity without any specific individuals being targeted for investigation. Thus, it is not enough for the defendant to show that the private citizen worked as a paid informant for law enforcement officials in the past. Instead, the defendant must show that the private citizen was working for law enforcement officials at the time of the alleged entrapment, either pursuant to specific directions or a formal general agreement. *See United States v. Barnett*, 197 F.3d 138, 143-44 (5th Cir. 1999); *United States v. Busby*, 780 F.2d 804, 805-07 (9th Cir. 1986); *State v. Hernandez*, 29 P.3d 877, 879 (Ariz. App. 2001).

The Colorado Supreme Court would undoubtably agree that, without more, a private citizen is not an agent of law enforcement officials simply because he has worked as a paid informant in the past. Further, unless law enforcement officials had some specific or general involvement in the alleged entrapment at the time it took place, it is immaterial that the citizen was subsequently

-10-

compensated for providing information to the police. *See People v. Hankin*, 498 P.2d 1116, 1118 (Colo. 1972) ("Entrapment exists only where police officers have been the creative force in instigating the offense."). We therefore hold, as a matter of law, that the evidence Ms. Nieslanik failed to discover regarding Mr. Beecroft's prior informant activities and the subsequent payment from Detective Mundt would not have been sufficient to establish a viable entrapment defense under Colorado law. As a result, the evidence would not have changed the result of a trial on the escape charges and Mr. Slusher would not have decided to go to trial instead of pleading guilty if he had been aware of the evidence.

Accordingly, Mr. Slusher has failed to establish that he was prejudiced by the failure of his trial counsel to investigate the entrapment defense, and he has failed to make a substantial showing of the denial of a constitutional right. We therefore DENY his application for a COA on the ineffective assistance claim and DISMISS this appeal.

Entered for the Court

Monroe G. McKay
Circuit Judge